## Case No. 4,330.

### In re ELDRIDGE.

[2 Biss. 362;[1] 3 Chi. Leg. News, 177; 4 N. B. R. 498 (Quarto, 162).]

Circuit Court, E. D. Wisconsin. Oct., 1870.

Conger & Sloan, for Stevens, first mortgagee.

Jackson & Ebberts, for Treat, second mortgagee.

Palmer & Cassidy, for assignee.

DRUMMOND, District Judge. The questions in this case must depend in part upon the law of Wisconsin. The 14th section of the bankrupt law [of 1867 (14 Stat. 523)] declares that no mortgage of any goods or chat-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

tels made as security for any debt or debts in good faith and for present consideration, and otherwise valid, and duly recorded pursuant to any statute of the United States, or of any state, shall be invalidated or affected by the bankrupt law.

Under the law of Wisconsin, in order to render a mortgage of chattels valid, the mortgagee must be in possession, or the mortgage must be recorded in the manner particularly pointed out in the statute.

The supreme court of Wisconsin has held in Chynowieth v. Tenney, 10 Wis. 397, and in Single v. Phelps, 20 Wis. 398, that mortgages of personal property do not cover what is afterwards acquired—that as to such property it is in the nature of a revocable license to take possession.

The point is not entirely free from difficulty, but on the whole my opinion is that the mortgages of the 13th of March and the 8th of May, 1868, for the property actually in possession of the mortgagor at the time, are valid under the law of Wisconsin. They appear to have been executed in good faith and for a valuable consideration, and were duly recorded. I see no good reason, therefore, for disturbing the decree of the district court on that point. But as to the property afterwards acquired there was not a valid mortgage, but only authority to take possession, and the rights of creditors, under the bankrupt law, must depend upon its effect upon the property at the time the act was done which might be supposed to operate as a transfer. This was the taking possession under the license contained in the mortgage. Then Eldridge was insolvent and the mortgagees must have known it, or had reason to believe it. The 35th section of the bankrupt law declares in substance that if any insolvent person within four months before proceedings in bankruptcy are commenced by or against him, and in order to give a preference to a creditor, makes a transfer of his property, and the person to whom it is made has reasonable cause to believe him insolvent, the transfer shall be void as to general creditors. It is true in this case there was not, in one sense, a transfer made on the 15th of October, 1868, because the instruction or authority to take possession of after-acquired property, as the supreme court of Wisconsin construes it, was given in the mortgages executed some months before. But it is not competent for a party to give this authority in relation to property which he may afterwards acquire, and thus prefer a creditor who shall take possession when he is known to be insolvent, and thus avoid the effect of the bankrupt law because literally he has not made a transfer. That certainly would be a facile method of evading the scope and spirit of the law. In legal effect it was a transfer within the meaning of the law. It was a continuing act from the date of the authority to the taking possession, the last act being the consumma-

tion of the transfer, and in this instance the transfer giving a preference, the mortgagor being insolvent, and the mortgagees knowing the fact. It must be treated as if a mortgage were made of the after-acquired property at the time the mortgagees took possession. It was in substance, then, the case described in the 35th section, and as against the assignee of Eldridge representing the general creditors, was void.

All the costs of the bankruptcy proceedings and expenses of the sale were, by decree of the district court, first to be paid out of the proceeds of the sale of the goods. The mortgagees should not have been taxed with the costs of the proceedings in bankruptcy. To the goods included in their mortgages they had a legal right. Over the goods not included, the district court had complete control for the benefit of the general creditors. It is only the fund within the legitimate power of the court that should have been charged with the costs and expenses of the proceedings in bankruptcy. But we have to deal with the case as it stands. The goods of the mortgagees have been converted into money, and that is now in court, and it is not inequitable to charge them with what would have been reasonable expenses for the sale of their goods. If they had retained possession of them, this charge they would have been obliged to meet, and and to that extent the claim on the fund in court will be allowed, as it is not claimed that the goods were not fairly sold.

Fortunately, in this case there is no difficulty in determining the amount and value of the goods included in the mortgages, and what were afterwards acquired, and the proceeds of the sale in each case.

That part of the decree of the district court deciding that the after-acquired property was covered by the mortgages, and that all the expenses of the bankruptcy proceedings and of the sale of the goods should be first deducted out of the money in court, will therefore be modified, and the proceeds of the sale of the after-acquired property will be directed to be paid over to the assignee, deducting the sum of one hundred dollars, which is allowed as a proper charge for selling that part of the property. There is a question made as to the fixtures in the store at the time the mortgages were executed. In the mortgage to Stevens the property is described as "all of the goods and merchandise now in the store." In the mortgage to Treat it is described as "all of the stock of goods and merchandise now in the store, and fixtures."

It was understood throughout that the mortgage of Stevens should take priority over that of Treat, and it was first recorded; and therefore it becomes necessary to decide whether Stevens' mortgage included the fixtures. They were of the value of two hundred and sixty dollars. Under some circumstances the term "goods and merchan-

dise in the store" might perhaps be presumed to include the fixtures there; but here there are facts which seem to limit the construction of the language in the Stevens mortgage to the goods and merchandise proper in the store. The mortgages were written by the same person, it is to be inferred, under special instructions from the mortgagor; and in the one the fixtures were omitted, and in the other the description of the property is substantially the same, save that the fixtures are added. The mortgages were executed together on the 13th of March, and the fair inference is that the Stevens mortgage was not intended to include the fixtures.