KANE (BARTLETT v.). See Case No. 1,-077.

## Case No. 7,607.

### KANE v. JENKINSON.

### [10 N. B. R. 316.] [1]

### District Court, E. D. Michigan. 1873.

BANKRUPTCY—DUTY OF ASSIGNEE—ADVANCEMENT ON CONTRACT MADE BEFORE BANKRUPTCY —RESCISSION.

A entered into a written contract with B to purchase a certain quantity of logs at a fixed price, one thousand dollars to be paid down and the balance as fast as the logs were delivered. The one thousand dollars was intended as an advance, and the balance, if any, was to be taken out of the last lot of logs delivered. Several months after the payment of the one thousand dollars. A wrote to B that in consequence of pecuniary embarrassments he was unable as yet to take the logs and pay for them. At this time none had been delivered. though a large number were at the place of delivery. B wrote to A notifying him that a large portion of the logs were ready for delivery, requesting him to receive and pay for them, stating further. that if he failed to do so the contract would be considered forfeited. Another tender was made to A. but he failed to comply with the contract. and soon after was adjudged a bankrupt. A's assignee in bankruptcy brought suit to recover the one thousand dollars advanced on account of the contract. alleging that the foregoing facts amounted to a rescission of the contract. *Held*, that the contract having been terminated solely on account of the default of the purchaser, the seller having been ready to perform on his part. an action would not lie by the purchaser or by his assignee in bankruptcy to recover back the payments made by him previous to his default.

On the 12th day of April, 1872, John and Charles Parkes. partners, under the firm name of J. & C. Parkes, of whose estate in bankruptcy the plaintiff [Edward E. Kane] is assignee, entered into a contract in writing with the defendant, as follows: "Agreed April 12th, 1872, between William Jenkinson, of Port Huron, in the county of St. Clair, and state of Michigan, and J. & C. Parkes. of Detroit, Wayne county. and state aforesaid. as follows: The said William Jenkinson agrees to sell to the said J. & C. Parkes all his pine logs on the south branch of the Au Sable

river, about one thousand five hundred and forty M feet board measure, be the same more or less; and the said J. & C. Parkes agree to buy said logs and pay therefor nine dollars and sixty cents per thousand feet, board measure, delivered to their mill-boom on the Au Sable river; and the said J. & C. Parkes agree to pay one thousand dollars down, and to pay nine dollars per thousand feet, board measure, as fast as delivered, exclusive of the one thousand dollars. The one thousand dollars is intended as an advance of about sixty cents per thousand feet, and the balance, if any, to be taken out of the last lot of logs delivered. * * *" The balance of the contract relates to the manner of measuring the logs, and is of no importance in the case. The one thousand dollars was paid according to the terms of the contract. On the 23d day of July, 1872, the Parkes wrote to Jenkinson that in consequence of pecuniary embarrassments they were unable as yet to take the logs and pay for them, the closing up of which letter is as follows: "There is, we believe, about one hundred and fifty thousand of your logs down. As we cannot tell how our affairs are going to turn, we thought it our duty to you to inform you of the position. so that you could take what course you think best in the matter." On the 13th day of August. 1872, Jenkinson served on the Parkes the following notice: "Detroit, August 13th, 1872. J. & C. Parkes, Detroit, Michigan: You are hereby notified that the logs contracted to be sold to you by me by contract made under date of April 12th, 1872, are now ready for delivery, and you are requested to receive and pay for them in accordance with the terms of the contract, in default of which said contract will be considered forfeited on your part by me, and I shall consider myself at liberty to dispose of the same as I best can. I am notified to take them out of the boom, and shall be obliged to do so, and having no means of retaining them, shall be obliged to sell and deliver to some person who can receive and pay for the same. I have been twice to the Au Sable. and was prepared to deliver the logs, but found no one to receive or pay for them. If you have any expectation of taking them notify me immediately of your readiness to receive and pay. I shall move in the matter of the delivery of the logs without delay, and if at the place of delivery there is no one prepared to comply with the contract on your part. I shall declare the contract forfeited. and without further waiting dispose of the logs. Yours, etc., · Wm. Jenkinson." On the 26th day of August, 1872, thirteen days after the service of the foregoing notice, Charles Parkes and Jenkinson met at the place of delivery, when and where the latter tendered to the former what logs were then down and ready for delivery, amounting to about seven hundred thousand feet. Parkes replied that they could not take the logs and pay for them, and did not do so.

[1] [Reprinted by permission.]

The Parkes were soon after put into bankruptcy, and nothing further has been done under the contract. At the time of the tender the market value of the logs had fallen, and they were then worth only eight dollars per thousand feet. Jenkinson, however, afterwards, and before this suit was brought, sold twelve hundred and twenty-nine thousand feet of the logs covered by this contract, at nine dollars per thousand feet, on time, and he has the remainder still on hand. This suit is brought by the assignee of the Parkes in bankruptcy, to recover the one thousand dollars paid down upon the contract, on the ground that the foregoing facts amounted to a rescission of the contract. On the part of Jenkinson it is contended, first, that the facts did not amount to a rescission, but on the contrary, that it was merely a case of default on the part of the Parkes to perform the contract on their part, and that Jenkinson, being in no manner in fault, but ready and willing to perform on his part, no action can be maintained to recover back the money paid in advance. Second, that if an action will lie, then there must be deducted from the one thousand dollars by way of damages, the loss sustained by Jenkinson by reason of the nonperformance on the part of the Parkes, which is claimed to be the difference between the contract price and the market value at the time of the default, or at least the price sold for so far as sales had been made by Jenkinson.

Mr. Kane and Mr. Campieto, for plaintiff. Atkinson & Hawley, for defendants.

LONGYEAR, District Judge. It is entirely clear that Jenkinson, the seller, was in no manner in default on his part, but that on the contrary the contract was terminated solely on account of the default of the Parkes, the purchasers. There are cases holding that an action will lie in such case by the purchaser to recover payments made, especially where, as in this case, the contract contains no express provision conferring upon the seller the right to rescind and retain payments made, in case of default on the part of the purchaser. The following cases so hold: Preston v. Whitney. 23 Mich. 260; Hickock v. Hoyt, 33 Conn. 553; Fancher v. Goodman, 29 Barb. 315; Mallory v. Lord, Id. 454; Crooks v. Moore, 1 Sandf. 297; Wheeler v. Mather, 56 Ill. 241, 251.

But the supreme court of the United States have, in explicit terms, decided that no action by the purchaser will lie in such case. Hansbrough v. Peck, 5 Wall. [72 U. S.] 497. At page 506, the late Justice Nelson delivering the opinion of the court, it is laid down that no rule is better settled than this: "That the party who has advanced money, or done an act, in part performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has been thus advanced or done." It is true, the contract in that case was for the sale of real estate; but it is difficult to conceive of any distinction on principle between such a contract and one for the sale of personal property. It is also true that in that case the contract contained an express provision for a forfeiture of payments in case of default by the purchaser; but it is to be observed that the court do not place the decision on that ground. On the contrary, the decision appears to be based upon the broad general principle enunciated in the above quotation without any qualification whatever. And this is still more evident from a perusal of the cases cited in support of the decision, in some of which the contract contained no provision for a forfeiture of payments. The cases so cited are Green v. Green, 9 Cow. 46; Ketchum v. Evertson, 13 Johns. 364; Leonard v. Morgan, 6 Gray, 412; Haynes v. Hart, 42 Barb. 58, and Chrisman v. Miller, 21 Ill. 236.

In the case of Green v. Green, there was a provision for forfeiture of payments, but it is not made a basis of the decision, expressly or impliedly, but the contrary appears. The case contains a discussion of the question as to what amounts to a rescission in such cases. At page 50, Chief Justice Savage, speaking for the court, says, "But unless there is an agreement, express or implied, to rescind, the party claiming that the contract is rescinded, must support that claim upon the fact of a violation of the contract by the other party." And at page 51, he says, "I forbear the citation of more cases. I have found none of a recovery, where the party wishing to consider the contract rescinded has not shown a breach of the contract on the other side, or what was equal to it."

In the case of Ketchum v. Evertson there was no provision for a forfeiture of payments; and the court made the same ruling as in Green v. Green. At page 365, Spencer, J., delivering the opinion of the court, says, "It would be an alarming doctrine to hold that the plaintiffs might violate the contract, and, because they chose to do so, make their own infraction of the agreement the basis for an action for money had and received." "Every man," says that learned judge, "who makes a bad bargain, and has advanced money upon it, would have the same right to recover it back that the plaintiffs have." These remarks, it seems to me, are well founded in reason, and they have a marked application to the present case. The learned judge proceeds: "The defendants' subsequent sale of the land does not alter the case; the plaintiffs had not only abandoned the possession, but expressly refused to proceed, and renounced the contract. To say that the subsequent sale of the land gives a right to the plaintiffs to recover back the money paid on the contract, would, in effect, be saying, that

the defendant could never sell without subjecting himself to an action by the plaintiffs." This commends itself to my judgment as entirely sound in principle; and it constitutes a full and complete answer to the position of the plaintiff in the present case—that the facts that the defendant treated the logs as his own after the default of the Parkes, and subsequently sold them as his own, constituted a rescission of the contract on his part—and conferred upon the Parkes, and upon the plaintiff as their assignee, a right of action to recover · back the money paid in advance upon the contract.

The case of Haynes v. Hart [supra], was based upon a contract for the sale of personal property, and in its incidents was very much like the case now under consideration, except that in that case the purchaser had the use of the property until default on his part, and it was provided in the contract that the seller could retake possession in case of such default, which he had done; but there was no provision for forfeiture of payments. At pages 59 to 60, Johnson, J., delivering the opinion of the court, however, says: "I think no case can be found where a purchaser has been allowed to recover back partial payments after default in making further payments, where the purchaser has merely kept the property agreed to be sold, or sold it to another in consequence of such default. In order," he says, "to entitle the purchaser to recover under such circumstances, he must show that the other party has been guilty of some breach on his part, or of some act in hostility to the contract. Here," he adds, "the party fails to get the property bargained for because he neglected and refused to pay the purchase price, and the owner takes it, as he would have a right to do, without any such provision in the agreement."

The foregoing quotations from cases cited by Justice Nelson, in Hansbrough v. Peck [supra], I think show conclusively that in the latter case the supreme court intended that the application of the rule there laid down should be fully as broad as the language used implies, and without any qualifications whatever. See, also, Dermott v. Jones, 2 Wall. [69 U. S.] 1, 9; Harris v. Bradley, 9 Ind. 166, 168.

The rule thus established is based upon a solid foundation, viz.: The sacredness and inviolability of contracts. It assumes that the law will not presume an agreement to pay back money, which has been paid upon a contract containing no such provision, and under which the money paid became at once the property of the party against whom such presumption is sought to be raised, where such party has done nothing on his part to forfeit the same. As a matter of strict law, as well as of right and justice between the parties, the rule commends itself to my judgment; and were I at liberty to disregard it I should not feel disposed to do so.

I hold, therefore, upon the authority of Hansbrough v. Peck, supra, which is absolutely binding upon this court, as well as upon principle, that the Parkes having been solely in fault, and the defendant having been in no manner in fault, the former could not have recovered from the latter the money paid in advance upon the contract if bankruptcy had not intervened, and the plaintiff, as assignee of the Parkes, occupies no better position, and therefore he cannot recover.

But the plaintiff could not recover in this case even under the decisions that hold that payments made under the circumstances stated may be recovered back. In those cases the right of recovery is based mainly upon a failure of consideration, in consequence of which it is held that the seller holds the money so paid without having rendered an equivalent, and hence that equity and good conscience require that he should return the same to the purchaser. No rule, however, is anywhere more fully recognized and enforced than the following is in and by those same decisions, viz.: That where in such case the seller has been in no manner in fault the same equity and good conscience which require him to refund the money paid, at the same time entitles him to retain so much of it as is necessary to fully indemnify him for all the damages he may have suffered in consequence of the non-performance on the part of the purchaser. Preston v. Whitney, 23 Mich. 260, 267; Hickock v. Hoyt, 33 Conn. 553, 559; Crooks v. Moore, 1 Sandf. 297, 300; Mallory v. Lord, 29 Barb. 454, 464; Ganson v. Madigan, 13 Wis. 67; Allen v. Jarvis, 20 Conn. 38; Haskell v. McHenry, 4 Cal. 411; Leonard v. Morgan, 6 Gray, 412, 415; see, also, dissenting opinions of Justices Scott and Lawrence in Wheeler v. Mather, 56 Ill. 251, 253.

Whether the measure of damages which defendant would have the right to retain would be the difference between the contract price and the price re-sold for, or between the former and the market value at the time of Parkes' default, it is unnecessary to consider in this case, because I find that upon either basis the damages exceed the amount of the advance payment. Neither is it necessary to consider whether the difference between the contract price and the price re-sold for can be resorted to in any case where such a resale has been made without notice to the former purchaser, as is held by some of the cases above cited; because I am of opinion that the notice given in the case was sufficient to comply with those decisions.

The only objection made to the notice in this case is that it did not specify that Jenkinson would look to the Parkes for any deficiency in case of a re-sale. This objection is founded upon a single decision of one of the supreme courts of the state of New York. The decision referred to is the case of Fancher v. Goodman, 29 Barb. 315, 317. The language used by the court in that

case would seem to sustain the objection; but one can hardly avoid the impression that the language was carelessly used, and was not intended in the full force of the words used and in the connection in which the words occur in the printed opinion. This is still more evident from a perusal of the opinion of the court in the only case cited, viz.: Crooks v. Moore, 1 Sandf. 297, in which, at page 302, the court says, "On his default the seller had a right to sell it on notice to him, and to look to him for the deficiency, if any, by way of damages for breach of his contract." There it was spoken of as a right "to look to him," etc., on account of the notice of re-sale having been given, and not as an essential part of the notice itself. In this latter case (Crooks v. Moore), the notice was simply that the seller "would put the goods on the market next day, if payment was not made that day." The sale was not made until several days after, and the notice was held sufficient, and the seller recovered damages for the deficiency. In that case it was also held that the re-sale need not be by auction, provided it appears that it was made for the best price that could be obtained. In the present case the re-sale was made for more than the market value at the time of the default. No complaint can, therefore, be made on account of the price obtained.

The final default of the Parkes took place August 26th, 1872. The contract was terminated thereby and the defendant was under no obligation to longer hold the logs for them, or to tender to them any of the remaining portion of the logs not then ready for delivery. Masterton v. Mayor, etc., of Brooklyn, 7 Hill, 61; Hosmer v. Wilson, 7 Mich. 294; Platt v. Brand, 26 Mich. 173. In the aspect of the case in which we are now considering it, the rights and liabilities of the parties would have to be determined as they stood at the time of the default. At that time the defendant had received from the Parkes' one thousand dollars, and at the same time he suffered in consequence of their default a loss of the profits he would otherwise have made. Taking matters as they then stood, the logs not having then been re-sold, defendant's loss of profit would have to be measured by the excess of the contract price over the then market value. It is true some of the logs were re-sold soon after, and for more than the market value at the time of the default. But they were so re-sold on time, and it is questionable if the price thus obtained could be considered a fair basis upon which to determine the loss of profits. It is unnecessary, however, as before remarked, to determine that question here, because, even on that basis, as we shall presently see, the damages would be greater than the advance payment.

It was claimed on the argument, and such was the impression of the court as then expressed, that in no event could the defendant claim damages for loss of profits on more than seven hundred thousand feet ready for delivery at the time of the default. On more mature reflection, however, I am satisfied the position is not a sound one, and that defendant would be entitled to damages for loss of profits on the whole quantity covered by the contract. The defendant was under no obligation to get all the logs down and have the whole ready for delivery at one time. The contract imposed upon the Parkes' the obligation to receive the logs and pay for them as fast as delivered. The defendant had the undoubted right to deliver in such lots or portions as he might see fit; and, as we have already seen, he was under no obligation to deliver, or tender for delivery, any more, after the failure of the Parkes' to receive and pay for the seven hundred thousand feet which were tendered. If afterwards, and before a re-sale, they had tendered performance on their part, the question would be presented in quite a different light; but they did not do so, neither did the plaintiff after his appointment as assignee. The contract covered the logs which were not tendered as well as those which were, and defendants' loss of profits attached as well to the one class as to the other. If, however, we adopt market value as the basis for determining the loss we need not go beyond the seven hundred thousand feet tendered: because the contract price being nine dollars and sixty cents, and the market value at the time of default eight dollars per thousand feet, the loss of profits on the seven hundred thousand feet alone would be one thousand one hundred and twenty dollars—more than sufficient to absorb the whole amount of the payment made in advance. If we adopt the price re-sold for, so far as the logs were re-sold, as the proper basis, then we would have the following result: The contract price being nine dollars and sixty cents, and the price resold for nine dollars per thousand feet, the loss on the one million two hundred and twenty-nine thousand feet re-sold would be seven hundred and thirty-four dollars and forty cents. To this must be added the loss on the logs still on hand, for which we have no other basis than their market value at the time of the default, to wit, eight dollars per thousand feet. The quantity still on hand was shown to be three hundred and five thousand feet. The loss upon this quantity on the above basis would be four hundred and eighty-eight dollars, which being added to the seven hundred and thirty-four dollars and forty cents, loss on the quantity re-sold, shows a total loss of one thousand two hundred and twenty-two dollars and forty cents, again more than absorbing the payment made in advance.

It is, therefore, entirely apparent that, as first stated, even if an action would lie in a case like the present, there would be nothing due the plaintiff here, and the action

could not be maintained. I prefer, however, to put the decision of the case upon the first proposition, viz.: That the contract having been terminated solely on account of the default of the purchaser, the seller having been ready to perform on his part, an action does not lie by the former, or by their assignee in bankruptcy, to recover back the payments made by them previous to their default.