## Case No. 4,964.

### In·re FOSTER.

[18 N. B. R. 64;[1] 10 Chi. Leg. News, 315.]

District Court, S. D. Illinois.   June 17, 1878.

By N. W. Branson, Register.

To Honorable Samuel H. Treat, District Judge: The·petition of Richardson & Co. and Clarke M. Smith, creditors of William A. Foster, praying for the adjudication of said debtor as a bankrupt, which was filed on the 4th of June, 1878, and the answer of said ·debtor denying the alleged acts of bankruptcy, and the testimony heretofore taken ·in this matter, having been referred by order of the court to the undersigned register, ·to consider the same and make report of his conclusions thereon, I would respectfully report that, after examining the evidence in this matter and hearing the arguments of Honorable J. W. Patton, attorney for the petitioning creditors, and Honorable A. L. Knapp, attorney for the debtor, I have arrived at the following conclusions: The ·debtor is a retail druggist, doing business at Springfield.   On the 11th of January, 1878, he executed a chattel mortgage to his father-in-law, Isaac L. Ewell, to indemnify said Ewell as surety for Foster on his note to H. B. Buck, for two thousand dollars, of even date with the mortgage, and payable eighteen months after date.   This two thousand dollar note was partially in renewal of a former note to Buck, signed by Ewell, as ·surety for Foster, for one thousand two hundred dollars, which was taken up on the exe-·cution of the new note.   The mortgage was acknowledged and recorded on the 14th of January last.   By this mortgage Foster con-·veyed to Ewell, among other things, all the ·stock of drugs, chemicals, medicines, wines, etc., constituting his stock in trade.   The mortgage is in the usual form, and contains ·the usual privilege to the mortgagee to seize the property whenever he shall feel himself unsafe or insecure.

It is charged by the petitioning creditors that this mortgage was fraudulent and void as to creditors, because made to delay and hinder creditors.   On this point I quote the testimony of Mr. Ewell literally as follows: "When I took this mortgage it was the understanding that he was to go on and sell at retail until I became dissatisfied.   I knew that he had been selling at retail, and I also knew that since I took the mortgage, and up until I took possession, he had been selling as before."   Mr. Foster testifies: "I have done a retail trade since the mortgage was given, the same as I did before."   "I have bought goods such as our business demanded since the mortgage was given."   On the 20th of May last Mr. Ewell took possession of the property under the mortgage. He says he took possession because he was dissatisfied with the way the store was running.   C. M. Smith had told him Foster was some two or three hundred dollars behind on rent.   On inquiry, he found indebtedness of Foster of seven or eight hundred dollars to six or seven persons, besides the debts on which Ewell was liable as surety.   Ewell had also gone Foster's security on a debt of seven hundred dollars to First National Bank, for money borrowed in February or March last, which has not been paid.   He further says: "At the time I took possession under my mortgage, I thought it was necessary to protect my interest, and, in my view, that necessity arose when I learned of the indebtedness of Foster, and because of Foster's failure to make deposits to meet the notes in the bank.   Foster told me before I took possession under my mortgage, that times were so hard that it was impossible to make the payments to meet the bank notes and Buck's note.   That information contributed towards my action in taking possession of the stock of goods under my chattel mortgage."

Mr. Foster testifies: "At the time Mr. Ewell took possession under his mortgage I could not pay C. M. Smith what I owe l h'm, and one of the notes to the First National Bank had become due and had been renewed because I could not meet it when due.   The failure to meet these debts when the same became due was because of the dullness of the times."   There is no evidence tending to show that Foster was insolvent at the time he executed the mortgage; but at the time possession was taken by Ewell under the mortgage, Foster, being a merchant or trader, was unable to pay his debts in the ordinary course of business, and was, therefore, within the meaning of the bankrupt law [of 1867 (14 Stat. 517)], insolvent.

The questions presented for determination in this matter are, whether the chattel mortgage, with the continued exercise of the right of sale of the mortgaged property by the mortgagor, constitute a fraudulent conveyance, and whether the seizure of the property by the mortgagee constitutes an unlawful preference.   In the case of Robin-

[1] [Reprinted from 18 N. B. R. 64, by permission.]

son v. Elliott, 22 Wall. [89 U. S.] 513, it was determined by the supreme court of the United States that a chattel mortgage of a stock in trade, which permits the mortgagor to dispose of the mortgaged goods in due course of trade, is fraudulent in law as to other creditors, and is null and void as to them, without reference to the good faith of the mortgage debt, or the intentions of the mortgagor as to fraud. The same doctrine was announced many years ago by the supreme court of this state, in Davis v. Ransom, 18 Ill. 396. In that case the court say: "The law gives no sanction to such arrangements, and, however well intentioned in fact, will hold them void as against creditors as tending to encourage and sustain frauds, and to hinder creditors in the collection of their just demands." This rule has been adhered to in several subsequent decisions of that court, and I understand this to be the doctrine established by the general current of authorities, both in this country and in England, though in some few states, a different rule has obtained. And it has also been held by many courts of high authority, that when the agreement permitting the mortgagor to sell does not appear on the face of the instrument, but appears by proof aliunde, the instrument is equally fraudulent and void as if the agreement had appeared on its face. Gardner v. McEwen, 19 N. Y. 123; Russell v. Winne, 37 N. Y. 591; Putnam v. Osgood, 52 N. H. 148; Collins v. Myers, 16 Ohio, 547; Freeman v. Rawson, 5 Ohio St. 1; Horton v. Williams, 21 Minn. 187; Steinart v. Deuster, 23 Wis. 136; Bank of Leavenworth v. Hunt, 11 Wall. [78 U. S.] 391; In re Manly [Case No. 9,031]; In re Kahley [Id. 7,593]. And the supreme court of this state in case of Barnet v. Fergus, 51 Ill. 352, use the following language: "It was held by this court, in Davis v. Ransom, 18 Ill. 402, and in Read v. Wilson, 22 Ill. 377, that a mortgage of a stock of goods, containing a provision authorizing the mortgagor to retain possession for the purpose of selling in the usual course of trade, was fraudulent and void as to creditors. This was held to be fraud in law. It is a necessary consequence of these decisions that where the mortgage contains no such provision, but the mortgagee nevertheless knowingly permits the mortgagor to make use of the property in the ordinary course of trade, and in the same way as before the mortgage was made, this would be such a perversion of the mortgage from its legitimate purposes as to withdraw from its protection, and place within the reach of other creditors, all the property which the mortgagee had permitted the mortgagor to hold for sale in the ordinary course of business. This principle has been recognized in Griswold v. Sheldon, 4 Comst. [4 N. Y.] 581, and Delaware v. Ensign, 21 Barb. 85." And in the case of Edgell v. Hart, 9 N. Y. 213, Denio, C. J., held that the existence of a provision permitting sales by the mortgagor, out of the mortgage or in it, would invalidate it as matter of law, and that where the facts are undisputed the court should so declare.

In view of the authorities above cited it would seem to be clear that the mortgage in question, which the mortgagee took (as he himself testifies) with the full understanding that the mortgagor was to go on and sell the mortgaged property at retail, was fraudulent in law and void as to creditors. But counsel for the debtor insist that while the mortgage may have been void as to creditors, yet it was good as between the mortgagor and mortgagee, and that as the mortgagee took possession of the property before any execution or other lien was obtained on the part of any of the creditors, and before the filing of the petition in bankruptcy, that the mortgage, or at least the seizure of the property under it, is now valid as against the creditors. Under the state law this position is doubtless well taken. The law of Illinois permits a debtor to prefer some of his creditors to others. But the bankrupt act was intended to prevent such preferences; and the question is thus presented as to whether the seizure of these goods by the mortgagee was such a transfer of the property as to make an unlawful preference within the meaning of the bankrupt act, and consequently to constitute an act of bankruptcy. If, as I think is clear, the mortgage in question was void as to creditors up to the 20th of May, 1878, when the mortgagee seized the property, then the seizure was the first act which gave it validity as against the creditors, and this was only fifteen days prior to the filing of the petition in bankruptcy. The seizure operated as a transfer of the property to the mortgagee, and enabled him to apply the proceeds of the property to his individual use, and thus gave him a preference over the other creditors. This question is incidentally passed upon by the supreme court of the United States in the case of Robinson v. Elliott, 22 Wall. [89 U. S.] 513. In that case the debtor had given a chattel mortgage which permitted the mortgagors to remain in possession of the mortgaged goods, and sell them as before, and supply their place with other goods. The mortgagees seized the goods under the chattel mortgage, and twelve days after such seizure a petition in bankruptcy was filed against the surviving mortgagor. The mortgagees filed a bill praying that an account be taken of the amount due them, and for a sale of the goods.

The supreme court held that the mortgage was constructively fraudulent, it appearing upon its face that the legal effect of it is to delay creditors. It was insisted by the mortgagees that if the mortgage is held void in law, still, the delivery of the goods to the mortgagees vests a sufficient lien prima facie to enable the mortgagees to enforce their lien in equity. On this point Mr. Justice Da-

vis, delivering the opinion of the court, says: "The answer to this is, that the case made by the bill does not proceed upon such a delivery at all, but upon the mortgage and seizure under it. Besides, if the appellants (mortgagees) could turn the proceedings into a voluntary pledge by the debtors, it would not help them, for it would violate the preference clause of the bankrupt act, as they got the goods only twelve days before the petition in bankruptcy was filed."

If the principle held in the numerous decisions above cited is correct, that a mortgage of goods is fraudulent in law where the intention appeared aliunde to permit sales of goods in the usual course of trade, then the fact that such permission appears on the face of the mortgage in question in Robinson v. Elliott does not make that case, so far as it refers to the preference clause of the bankrupt act, distinguishable in principle from cases where such permission is proven aliunde. The decision of Judge Drummond in Harvey v. Crane [Case No. 6,178] appears to be in point in this case. In that case the chattel mortgage in question was executed on the 20th of March, 1869, but not recorded until the 5th of March, 1870. It had not been acknowledged as it stood when the decision was rendered, and included after purchased goods, and permitted the mortgagor to go on and sell in the usual course of business, and was void as against creditors under the law of this state. On the 7th of March, 1870, the mortgagee took possession of the property under the mortgage, knowing, or having reason to believe, that the mortgagor was insolvent. On the 30th of the same month a petition in bankruptcy was filed against the mortgagor. The mortgage was given for a bona fide loan. After reciting these facts in his opinion, Judge Drummond says: "But in this case it is claimed that a mortgage, not valid as against creditors under the laws of this state, has ripened into an effectual lien or transfer by virtue of the possession taken on the seventh of March, because, though the mortgagor was then insolvent, and the mortgagee knew it, proceedings in bankruptcy were not commenced until the thirtieth of March, and the assignee took as a purchaser, with notice of all equities. But there was nothing operative as against creditors until the defendant took possession. As against them, until then, the defendant had no security for his loan. A creditor may obtain a preference from an insolvent debtor with knowledge of the insolvency, if within the limitation prescribed by the law. Bean v. Brookmire [Id. 1,168]. But the possession must be obtained by a complete act within the limitation. Here the mortgage did not create the preference as against creditors that was invalid; neither did the record. It was still, when recorded, an invalid mortgage as against creditors under the law of the state, among other reasons, because as it stood it was an unacknowledged mortgage.

That which operated against creditors, if at all, was the taking possession on the 7th of March. It is true it was authorized by the mortgage, and it was, in that sense, the joint act of the mortgagor and the mortgagee, possession being the consummation of the act. The assignee represents the creditors, and any claimed lien which would be void as against creditors generally, would also be void as against the assignee. In this case the defendant cannot rely upon the mortgage, because it is invalid as to creditors under the law of the state. He cannot rely on the possession, because it was taken under authority from an invalid mortgage, and because, further, the mortgage was wrongfully used by the defendant to obtain possession, he, at the time, knowing the insolvency of the mortgagor."

This decision then seems to announce the principle that a chattel mortgage, void as to creditors under the law of this state, and under which the mortgagee has taken possession, having at the time reasonable cause to believe the mortgagor to be insolvent, is also void as against the assignee in bankruptcy, appointed under bankruptcy proceedings commenced against the mortgagor within two months after possession has been taken by the mortgagees; that such taking of possession operates as a preference, and is, therefore, void as against the other creditors, and does not remit the mortgagee to his rights as of the date of the mortgage. The decision of Justice Woodruff, of the United States circuit court for the Northern district of New York, in Smith v. Ely [Case No. 13,044], also appears to be in point. Of the mortgages in question in that case, Justice Woodruff says: "Although it is not in terms so expressed in the mortgages, yet it is clear upon the evidence that the understanding of all parties was, that the mortgagors should continue their business as merchants, as such sell the goods then on hand, buy others, and sell them in turn in their discretion, for the purposes of gain." On the 12th of November, 1870, the mortgagees took possession under the chattel mortgages, and on the 13th of January, 1871, a petition in bankruptcy was filed against the makers of one of the mortgages. As to the effect of such possession, the court says: "Under these views of the rights of the parties and of the validity of the mortgages, how did the delivery or surrender of possession by the bankrupts to the defendants on the 12th of November, 1870, affect the right of the assignee in bankruptcy? If, as against creditors, the mortgages and the alleged title of the defendants to the property was fraudulent and void, their taking possession in the mere exercise of their claim of the title would not aid them. Their title remained fraudulent and void still, as against creditors. If, on the other hand, the assent of the bankrupts to their taking possession, the delivery of the property, and surrender of the keys, were of them-

selves an appropriation of the property to the payment of the mortgage debt, then the bankrupt law pronounces it void, for this reason—both parties then knew that the bankrupts were insolvent; it swept the entire partnership property into the hands of the defendants; it operated, and was clearly intended to operate, to give them security and payment to the exclusion of their creditors, and it was within four months next preceding the filing of the petition upon which the defendants were adjudged bankrupts. The defendants can, therefore, gain nothing from this latter view of the transactions." See, also, Smith v. McLean [Id. 13,074]; In re Kahley [Id. 7,593]; In re Eldridge [Id. 4,330].

This last case was also decided by Judge Drummond, and grew out of chattel mortgages executed in Wisconsin, in March and May, 1868, under which the mortgagees took possession on the 15th of October, 1868. The petition in bankruptcy against the mortgagor was filed on the 19th of October, 1868. The court held that, as to the property afterwards acquired under the law in Wisconsin, there was not a valid mortgage, but only authority to take possession, and the rights of creditors, under the bankrupt law, must depend upon its effect upon the property at the time the act was done which might be supposed to operate as a transfer. This was the taking possession under the license contained in the mortgage. At that time the mortgagor was insolvent, and the mortgagees had reason to believe it. The court says: "It is true in this case there was not, in one sense, a transfer made on the 15th of October, 1868, because the instruction or authority to take possession of after-acquired property, as the supreme court of Wisconsin construes it, was given in the mortgages executed some months before. But it is not competent for a party to give this authority in relation to property which he may afterwards acquire, and thus prefer a creditor who shall take possession when he is known to be insolvent, and thus avoid the effect of the bankrupt law, because literally he has not made a transfer. That, certainly, would be a facile method of evading the scope and spirit of the law. In legal effect it was a transfer within the meaning of the law. It was a continuing act from the date of the authority to the taking possession, the last act being the consummation of the transfer, and in this instance the transfer giving a preference, the mortgagor being insolvent, and the mortgagees knowing the fact. It must be treated as if a mortgage were made of the after-acquired property at the time the mortgagees took possession. It was in substance, then, the case described in the 35th section, and as against the assignee of Eldridge, representing the general creditors, was void."

In view of the authorities above referred to, my conclusion is, that the mortgage in question, and the seizure of the property thereunder, were both acts of bankruptcy, the first as being a conveyance with intent to delay or hinder creditors; the second as operating as an unlawful preference.

TREAT, District Judge. Decision of register affirmed.