JOHN C. LANDIS, Trustee, etc., Respondent, v. W. A. P. McDONALD, Appellant.

Kansas City Court of Appeals, April 1, 1901.

1. **Fraudulent Conveyances: CHATTEL MORTGAGES: POSSESSION: CREDITORS: STATUTE.** The statute making unrecorded chattel mortgages, where possession is not taken of the mortgaged property, invalid against any other person than the parties thereto, does not apply to strangers but does protect creditors both prior and subsequent; but the recording of the mortgage or the possession of the mortgaged property taken before the prior creditor obtains a lien, will defeat him, yet such action can not defeat a subsequent creditor.

2. ————: ————: ————: ————: ————. The statute protects the general creditor and when he secures a judgment with a proper process his right will relate back to the origin of his debt.

3. ————: ————: ————: ————: ————: NOTICE. The fact that the general creditor may, subsequent to the origin of his debt, receive notice of a secret mortgage, will not destroy his right which accrued prior to the notice.

4. ————: ————: ————: ————: ————: INJURY. The creditor does not have to show that he was injured by the concealment of

Landis v. McDonald.

the mortgage; the statute assumes injury and deception and itself avoids the mortgage.

5. ——: ——: ——: ——: ——: INTENTION. The mortgagor need not have a fraudulent intent, as the statute requires no such condition.

6. ——: ——: ——: ——: ——: AGREEMENT. The statute does not require any agreement that the mortgage should be kept from the record for the purpose of giving false credit, since such is the tendency and effect of withholding it.

7. ——: ——: ——: ——: ——. Taking possession after fraud is committed will not nullify it.

8. Bankruptcy: ACT OF: FRAUDULENT CONVEYANCES: POSSESSION: PREFERENCE. A chattel mortgage to prefer a creditor was made on January 12, 1899, and withheld from record. Possession was taken under the mortgage the fourteenth of March, 1900. The mortgagor was declared bankrupt on the twenty-seventh of the same March. *Held*, the preference of the creditor was an act of bankruptcy, and under the Federal bankrupt act was only consummated on the taking of the possession, and as that was within four months of the mortgagor's being declared a bankrupt, his trustee could avoid the preference and recover the goods or their value.

9. ——: ——: ——: ——: ——. The bankrupt statute authorizes a trustee in bankruptcy to avoid transfers by the bankrupt, of his property, where a creditor of such bankrupt might avoid them.

10. ——: FRAUDULENT CONVEYANCES: PREFERENCE: INTENTION: INSTRUCTION. Where a mortgagor is declared a bankrupt beacuse he undertcok to prefer a creditor, in a suit by his trustee to set aside such preference, the question of his solvency at such time and his intention in the act are not open for the consideration of the jury, but the question whether the creditor had reasonable cause to know that he was being preferred, is a proper question for the jury.

Appeal from Buchanan Circuit Court.—*Hon. S. P. Huston,*
Special Judge.

AFFIRMED.

Landis v. McDonald.

*J. F. Woodson, Johnson, Rusk & Stringfellow,* for appellant.

(1) The mortgage nor contract were fraudulent even as to a creditor of the bankrupt, in a direct suit by said creditor, consequently they were not fraudulent as to the trustee of the debtor. (2) Trustee in bankruptcy can not avail himself of an equitable estoppel which may exist in favor of a particular creditor. (3) The mortgage and contract were not preferences under the bankruptcy act. (4) The court erred in giving the instruction asked by plaintiff, and refusing to sustain defendant's demurrer to the evidence.

*George W. Groves* and *Culver & Phillip* for respondent.

Submitted argument.

ELLISON, J.—On March 29, 1898, P. E. Manning gave a chattel mortgage to defendant, and others for whom defendant acted, on his stock of merchandise, then on hand, to secure them in the sum of $10,412.71. This mortgage was recorded on the next day, March 30. Manning remained in possession and by the terms of the mortgage was to continue to sell the goods in usual course, remitting to defendant the proceeds of sale less expenses. At the time the mortgage was executed defendant gave Manning a separate paper (not recorded) which authorized him to use twenty-five per cent of the proceeds of sales with which to buy other goods from time to time, with a view of keeping up the stock. Manning then conducted the business, buying and selling goods, for nearly a year, viz.: January 12, 1899, and paid a portion (perhaps one-third) of his indebtedness to defendant. On that day he

entered into another written agreement with the mortgagees in which he agreed to add to the stock $2,400 in other merchandise by the fifteenth of March following; and further agreed that in addition to the lien of the original chattel mortgage on the original stock, but in addition thereto, said mortgage was to be a lien on the after-acquired stock. In consideration for this, defendant extended time of payment of the indebtedness. This writing was not recorded. After this unrecorded agreement was made, Manning became indebted to various wholesale merchants for goods purchased and placed in the mortgaged stock.

Afterwards, on March 14, 1900, Manning, being unable to meet his indebtedness to defendant, turned over to him the entire stock, both original and after-acquired, the latter being of the cash value of $828.55. Shortly thereafter (March 27, 1900) Manning was adjudged a bankrupt and plaintiff was appointed trustee. The trial was had before Hon. S. P. Huston, special judge, who permitted plaintiff as trustee, asserting the rights of the creditors of the bankrupt, to recover the value of the after-acquired property, and defendant appealed.

The first question presented is as to the validity of the unrecorded agreement for Manning to purchase additional merchandise and to extend the lien of the original mortgage over such property. The parties have considered such agreement as equivalent to a mortgage, and we will therefore so consider it. The case, then, may be stated to be this: Manning made to defendant a chattel mortgage which was never recorded. Manning remained in possession of the property for more than a year when he delivered possession to defendant. That between the time of executing the mortgage and the delivery of possession, Manning's indebtedness to these creditors arose. These creditors had no lien against the property and

took no steps to lay hold of the property; they were merely creditors at large.

In this State no chattel mortgage is "valid against any other person than the parties thereto, unless possession of the mortgaged or trust property be delivered to and retained by the mortgagee or trustee or *cestui que trust,* or unless the mortgage or deed of trust  *  *  *  be acknowledged and recorded." R. S. 1899, sec. 3404. This statute is unlike that of many of the States and is unlike other kindred statutes of this State, in that it discards the use of the words creditors and purchasers, prior or subsequent, and uses the broader expression, *"any other person."* Broad as this statutory phrase, "any other person," is, it does not apply to strangers; and one claiming the mortgage to be void must have some right to, or claim upon, the mortgaged property. The statute, however, does undoubtedly apply to creditors. It applies to them whether they are prior or subsequent creditors. In case of prior creditors, if the mortgage be recorded, or the mortgagee takes possession of the property before such creditor obtains a lien thereon or changes position in relation thereto, it validates the mortgage as to him. Such is the extent of the cases of which Dobyns v. Meyer, 95 Mo. 132, is a type. But in case of subsequent creditors the mortgage is not validated by such registration or possession. The reason for this is founded in common justice, which the statute seeks to secure. The object to be attained by the statute is so apparent, is so well understood and universally acknowledged, that we need scarcely do more than mention it. Its object is to protect persons dealing with him who claims to be the owner of the property with which he may be dealing, or upon the faith of which others may be dealing with him. It is necessary to the validity of the mortgage that the mortgagee take the possession out of the hands of the mortgagor so that all may see the true situation of the

property; or, if he does not so take possession, he must record his mortgage so that all may learn the true situation. So that the statute exactly meets and fully protects one who extends credit to a mortgagor in possession of the property, and the mortgage not recorded. It has been expressly so held under statutes less broad than ours. Dempsey v. Pforzheimer, 86 Mich. 652; Cutter v. Steele, 85 Mich. 627; Root v. Harl, 62 Mich. 420; Crippen v. Fletcher, 56 Mich. 386. In the latter case it was said:

"When a chattel mortgage exists and is concealed, it is, under the statute, void for the reason that it produces a false appearance of entire solvency when in fact a person known to have mortgaged his stock would not be as likely to get credit as one who had given no such security; and those who deal with such a debtor are liable to be defrauded by appearances. One who gives credit under such circumstances is necessarily exposed to that mischief, and the law has removed all questions of suspicion or notice by making chattel mortgages void, at all events, against creditors who deal with a debtor so situated. Such creditors are directly within the policy of the statute." It needs no more argument to show that such a man needs the protection and warning which a change of possession, or a registration, would give him, than it does to show that the terms of the statute aforesaid are broad enough to include him.

But it is said that the creditors in this case being general creditors, or creditors at large, they can not invoke the aid or protection of the statute; and that if they could, they have not shown that they were harmed, or that they were deceived by the concealment of the mortgage. We are, however, of the opinion that the statute applies to and protects a general creditor, or, as he is sometimes called, a creditor at large. While it is necessary that the creditor must be prepared to lay hold of the property in specie (such, for instance, as by attachment,

or execution under a judgment) when he *comes to enforce* his right; yet, that right may accrue to him as *a mere general* creditor. In discussing this subject, the court of appeals in New York said: "It is true, the mortgage can not be legally questioned until the creditor clothes himself with a judgment and execution, or with some legal process against his property; for creditors can not interfere with the property of their debtor without process. But when they present themselves with their process they may, I think, go back to the origin of their debt, and show, if they can, that when it was contracted, the incumbrance with which they are now confronted existed and was kept secret, by being withheld from the proper officer." Thompson v. Van Vechten, 27 N. Y. 568, 582; Stewart v. Beale, 7 Hun. 416; affirmed 68 N. Y. 629; Frazer v. Gilbert, 11 Hun. 637. The statute does not make it a condition to its protection that the creditor must be a specific creditor with process for seizure of the property in his hands. "The fact that the creditor can not assail the mortgage until he has seized the property is of no moment in determining whether he belongs to the class of persons as to whom the mortgage is void." Bank v. Oium, 3 North Dak. 193, 200; Feary v. Cummings, 41 Mich. 383. If he belongs to the statutory class, he may then prepare, or qualify, himself to assert his right by the proper procedure, and when thus prepared with process he may enforce the right which accrued to him as a creditor at large.

It is held in some jurisdictions that notice to the general subsequent creditor of an unrecorded chattel mortgage before he seizes the property with process will defeat his right to assail it. It is so held in Iowa, but the Federal circuit judge of that State condemns the view as lacking good reason. Crooks v. Stuart, 7 Fed. Rep. 800. And in this State there is a line of authority beginning with Davis v. Ownsby, 14 Mo. 170,

down to Bank v. Rohrer, 138 Mo. 383, holding that, as to real estate, "the title of a bona fide purchaser or mortgagee under a deed or mortgage not recorded, is good against creditors at large, and is also good against sales under judgments and executions, if the deed or mortgage is duly recorded before such sales." But those cases, considered in connection with Bank v. Buck, 123 Mo. 141, and Bank v. Newkirk, 144 Mo. 472, do not affect the question now discussed. For in the latter cases it is held that withholding a mortgage of real estate from record will render the mortgage void as to those extending credit while the mortgage was concealed, if it was withheld with a view to deceive such creditor *"or has that effect."* We, therefore, agree with the view stated in Crooks v. Stuart, supra, that it is most unreasonably to allow notice of a concealed mortgage to destroy a right which accrued *after* the harmful act and *before* the notice of it.

With regard to the contention that the creditors here did not show that they were harmed or deceived by the concealment, it is our opinion, where one shows that he extended credit to a chattel mortgagor after the execution of the mortgage, and during the period it was withheld from the record, the mortgage should be declared invalid as to him without an affirmative showing that he was injured or misled. The statute itself avoids the mortgage. Injury and deception will be assumed. It is clear that when one person extends credit to another he supposes that appearances are real and that that other is not making a silent affirmation of a falsehood. "In business affairs property is a basis of credit. It is a matter of common observation and knowledge that giving a chattel mortgage by a business concern injures its credit." Williams v. Kirk, 68 Mo. App. 462. In Hildeburn v. Brown, 17 B. Monroe, 779, it was said that the effect of an arrangement to withhold a mortgage of real estate, though it may not have

originated in a fraudulent intent "was to secrete from the public eye the true condition of the debtor and thereby enable him, under the semblance of being the owner of unincumbered real estate, to deceive and mislead other persons by inducing them, upon the faith of his supposed unembarrassed condition, to give him credit which would have otherwise been withheld. Such contrivances or acts, though not designed to perpetrate an actual fraud upon other persons, have an inevitable tendency that way, and are obviously opposed to the general policy of the law requiring the public registration of all liens and incumbrances upon property permitted to be retained and claimed by debtors."

So the Supreme Court of Mississippi, in speaking of an unrecorded mortgage of chattels and real estate, used this language: "We are of the opinion that the natural and logical effect of the agreement and assignment, and the conduct of the parties thereto was to mislead and deceive the public, and induce credit to be given to Baggett, which he could not have obtained if the truth had been known, and, therefore, the whole scheme was fraudulent as to subsequent creditors, as much so as if it had been contrived with that motive and for that object." Hilliard v. Cagle, 46 Miss. 309. These cases are quoted with approval by the Supreme Court in Bank v. Buck, supra.

It is not necessary, under the statute aforesaid, that there be a fraudulent intent or purpose in keeping the mortgage off the record. The statute requires no such condition. But if it did, the intent would be presumed, since, in law, a man is presumed to intend the natural consequence of his act. Bank v. Buck, 123 Mo. 141; Dry Goods Co. v. Brown, 73 Mo. App. 245; State to use v. O'Neill, 151 Mo. 67, 85, 87. "There are many acts not the result of intentional fraud which the law, nevertheless, *from their tendency to deceive other per-*

*sons,* or from their injurious consequences to the public, prohibits as being within the same reason and mischief as actual fraud." Reed v. Pelletier, 28 Mo. 177.

While much is said in the cases about an *agreement* to withhold the mortgage from record for the *purpose* of giving false credit, yet, in our opinion, it is not necessary in making out the case that it should be shown there was any agreement, or any purpose. The statute requires no such condition. It is sufficient that the *tendency* and *effect* of so withholding the deed is to induce others to extend credit to the mortgagor. We have just seen that the purpose will follow the act of which it is the natural consequence. And so of the agreement; there can not possibly be a reason for requiring an agreement to do a wrongful and injurious act. If an act of such nature is committed, its consequences are equally as harmful and against the policy of the law as if it had been agreed upon. We said this much, in effect, in Williams v. Kirk, supra, and we are satisfied the logic of the foregoing authorities sustains the position.

It is of no avail to defendant that he took possession of the goods. The fraud had already been committed and the injury already done; "taking possession will not nullify or neutralize an actual fraud." State to use v. O'Neill, 151 Mo. 67, 88. And so we held in Williams v. Kirk, supra.

There is nothing in the case of Barton v. Sitlington, 128 Mo. 174, which can be said to militate against any of the foregoing views. An undoubtedly sound proposition of law is there stated in reference to parties being induced to extend credit by reason of the absence of the mortgage from the record. But the further propositions herein considered were not involved in that case and were not referred to by the court.

The defendant combats the right of plaintiff, as trustee in bankruptcy, to recover the mortgaged property or its value, or

to assert the rights of the creditors of the bankrupt.   This position involves a construction of sections 3, 60 and 70 of the National Bankrupt Law of 1898.   Section 3 reads as follows:

"Sec. 3.   *Acts of Bankruptcy.*—(a)   Acts of bankruptcy by a person shall consist of his having (1)   *   *   *; or (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors;   *   *   *.

"(b)   A petition may be filed against a person who is insolvent and who has committed an act of bankruptcy within four months after the commission of such act.   Such time shall not expire until four months after (1) the date of the recording or registering of the transfer or assignment when the act consists in having made a transfer of any of his property with intent to hinder, delay, or defraud his creditors or for the purpose of giving a preference as hereinbefore provided, or a general assignment for the benefit of his creditors, if by law such recording or registering is required or permitted, or, if it is not, from the date when the beneficiary takes notorious, exclusive, or continuous possession of the property, unless the petitioning creditors have received actual notice of such transfer or assignment."

Section 60 is as follows:

"Sec. 60.   *Preferred Creditors.*—(a)   A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

"(b)   If a bankrupt shall have given a preference within

four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

Section 70 is in the following words:

"Sec. 70. *Title to Property.*—(a)   The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, *   *   *."

"(e)   The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication.   Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value."

It has been already stated that the mortgage was made on the twelfth of January, 1899, possession delivered to defendant the fourteenth of March, 1900, and Manning declared a bankrupt the twenty-seventh of March, 1900.

The dates just mentioned are important in that any preference given one creditor over another, within four months of bankruptcy, is void under the Federal statute just quoted.   So, therefore, the question is, when was this preference given to defendant:   Was it in January, 1899, when the mortgage was given ? or, was it in March, 1900, when possession was taken ? If the former, the preference being more than four months

Landis v. McDonald.

before bankruptcy, is valid. If the latter, it would be less than four months and is, therefore, invalid. The decisions of the Federal courts have not been uniform on the question resulting perhaps from different construction of State statutes on the validity of chattel mortgages. The case of Sawyer v. Turpin, 91 U. S. 114, influenced by the construction of Massachusetts statutes by the courts of that State, hold that the date of the unrecorded mortgage is the act of preference. While he case of Bank v. Hunt, 11 Wall. 391, holds that taking possession is the act of preference. And so do the cases of In re Eldridge, 2 Bissell, 362; In re Foster, 9 Fed. Cas. 524; Harvey v. Crane, 11 Fed. Cas. 734, and Kane v. Rice, 14 Fed. Cas. 124.

But the foregoing cases arose under the bankrupt law of 1867. The present bankrupt statute, quoted above, is different from the law of 1867 in essential particulars, and we are left to construe it without much aid from the foregoing cases. Section 3 (subdivision "a") declares what are acts of bankruptcy. Among these is where an insolvent person transfers any of his property to one creditor with intent to give a preference over other creditors. Subdivision "b" of that section declares that a petition may be filed against a person who has committed any of those acts within four months after the act is committed; and that the four months time shall not begin to run until the instrument is recorded, or possession is taken. Subdivision "b" of section 60 declares that if the bankrupt shall have given a preference within four months before filing the petition against him and the person receiving the preference has reasonable cause to believe it was intended to give him a preference, the trustee may avoid it.

Section 3 plainly reads that if an insolvent person transfers any of his property to a creditor with intent to prefer him over other creditors, he commits an act of bankruptcy. Sub-

division "b" then declares that at any time within four months after the transfer is recorded or the possession of the property delivered, the other creditors may file a petition against him for such act of bankruptcy. The act is not committed until record is made or possession taken. Section 60 declares that if such act is committed within four months before the petition is filed and the creditor has reason to believe he is being preferred, the transfer may be set aside by the trustee. Keeping in mind that the act of bankruptcy *is not committed*, so far as the question of limitation is concerned, when the transfer is executed, but only when it is consummated by a delivery of the property, or an equivalent to delivery by recording, we readily see that the statute means that the four months, within which the petition must be filed to set aside the transfer, does not begin to run until the possession is taken or the transfer recorded. Section 60 should be construed just as though it read that the trustee may avoid any transfer which the transferee may have had reasonable cause to believe was intended to be a preference, by making his application at any time within four months from the time in which such transfer became an act of bankruptcy by recording the transfer or delivering the property transferred.

The preference spoken of in section 60 is not made except by act of bankruptcy. And the act of bankruptcy is not committed until it is made known by delivery or record, or is otherwise known. As is said by SHIRAS, J., in In re Klingaman, 101 Fed. Rep. 691, "the intent of this statute is to declare that, as against creditors of an insolvent, the limitation of time for invoking relief against a preference does not begin to run until in some form they have received actual or constructive notice of the transfer to the preferred creditor; and this intent is reached by the declaration that in such cases the transfer constituting the act of bankruptcy shall be held to date from the

time the instrument of transfer is recorded, or the possession is taken, or notice is otherwise brought home to the creditors of the bankrupt."

It is contended that the trustee plaintiff can not avoid the transfer made by the bankrupt—that he can not recover the property or its value, as in this case—that he stands in the bankrupt's shoes in this respect and can not do what the bankrupt himself could not have done. The statute of bankruptcy itself disposes of this contention. It will be seen that section 60 (subdivision "b") itself declares that the transfer "shall be voidable by the trustee." And section 70 (subdivision "e") reads that the "trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred or its value  *  *  *."

The trial court gave an instruction to the jury for the plaintiff which omitted the question whether Manning was insolvent, or whether he intended to make a preference, when he made the transfer. Those questions were properly omitted from the instruction. They were determined in the adjudication of bankruptcy. The transfer under such conditions was the act of bankruptcy in this case. But whatever might be the cause or foundation of the adjudication of bankruptcy, when the party has been declared a bankrupt, then the statute authorizes the trustee to avoid a transfer of the nature herein discussed, provided the creditor had reasonable cause to know that he was being preferred, and this hypothesis was embodied in the instruction.

The judgment is affirmed. All concur.