| 85 | 627 |
|----|-----|
| 86 | 655 |

| 85 | 627 |
|-----|-----|
| 116 | 146 |

DWIGHT CUTLER v. WILLIAM STEELE ET AL.

*Chattel mortgage—Failure to file—Renewal creditors—Diligence—Estoppel.*

1. Unrecorded chattel mortgages are void as against creditors of the mortgagor who have accepted renewal notes, or extended the time of payment on old debts for a definite period, in reliance upon the non-existence of such mortgages; citing *Root v. Harl*, 62 Mich. 422.

2. Where, after a creditor has agreed with a debtor to accept a renewal note for a portion of the debt, the debtor executes a chattel mortgage upon his property, which the mortgagee fails to record, and the creditor accepts the renewal note in reliance upon the non-existence of such mortgage, the date of the renewal note must be taken as the date of the transaction, so far as the relative rights of the mortgagee and the creditor are concerned.

3. It is held unnecessary in this case to determine the rights of a diligent mortgagee as against those of a diligent creditor of the mortgagor, as the complainant is not in a position to raise the question, not having exercised or intended to exercise due diligence.

4. The term "creditors," as used in How. Stat. § 6193, avoiding unrecorded chattel mortgages as against creditors of the mortgagor, includes those who have entered into contracts with parties as indorsers, guarantors, or sureties.

   *So held*, where a bank accepted an indorser without notice or knowledge of the existence of an unrecorded chattel mortgage on his property, but which was recorded before the contingent liability of the indorser was fixed by the protesting of the note, and it was claimed that the indorser did not become a debtor of the bank until such liability was fixed; which contention is rejected by the Court.

Appeal from Ionia. (Smith, J.) Argued April 16, 1891. Decided May 8, 1891.

Bill to foreclose a chattel mortgage. Complainant

appeals.   Decree affirmed.   The facts are stated in the opinion.

*George A. Farr*, for complainant, contended:

1. The statute must be strictly construed; citing *Tannahill v. Tuttle*, 3 Mich. 104; *James v. Howard*, 4 Id. 446; *Tong v. Marvin*, 15 Id. 60; *Chapin v. Paper Works*, 30 Conn. 461; *U. S. v. Armory*, 35 Ga. 344.

2. In support of the claim that the Webber note was renewed when they agreed to accept part payment and a renewal note for the balance, and that any other construction is inequitable, counsel cited 1 Story, Eq. Jur. § 345; 1 Pom. Eq. Jur. § 378; *People v. Taylor*, 2 Mich. 253; *Stuart v. Worden*, 42 Id. 154; *Goodenow v. Curtis*, 33 Id. 506; *Waldron v. Murphy*, 40 Id. 668.

3. Had the mortgage been fraudulent in its inception, there might be room for the argument that the bank was entitled to relief; but it is insisted that there is no analogy between the general doctrine of actual fraud which is so by the common law and the narrow limits of this statute, which takes away valuable property rights, and is contrary to the common law.   In the case of actual fraud it is held in most of the states that a claim for a tort not reduced to judgment would come within the general provisions of relief in case of fraudulent conveyances; citing *Harris v. Harris*, 23 Grat. 737; *Bongard v. Block*, 81 Ill. 186; *Weir v. Day*, 57 Iowa, 87; *Scott v. Hartman*, 26 N. J. Eq. 90; *Damon v. Bryant*, 2 Pick. 411; *Bishop v. Redmond*, 83 Ind. 157; and so in case of a wife's seduction; citing *Hunsinger v. Hofer*, 110 Ind. 390; and in a claim for libel; citing *Cooke v. Cooke*, 43 Md. 522; *Hall v. Sands*, 52 Me. 355; and in a case for deceit, assault and battery, or breach of promise to marry; citing *Miner v. Warner*, 2 Grant, Cas. 448; *Martin v. Walker*, 12 Hun, 46; *Hoffman v. Junk*, 51 Wis. 613; but the above is not the rule in this State, nor will it be contended that in the above-mentioned cases the principle would have been applied to a statute like ours; citing *Clements v. Moore*, 6 Wall. 299.

4. The bank was not a debtor of Steele within the provisions of the statute.   A debt is that which one person is bound to pay to another, either presently or at some future time; citing *Lockhart v. Van Alslyne*, 31 Mich. 78; and the law does not order the indorser to pay anything until the maker fails to make payment, and legal steps are taken to fix his contingent liability; citing *Anthony v. Savage*, 3 Pac. Rep. 548; *Appeal of*

*City of Erie*, 91 Penn. St. 402; *People v. Arguello*, 37 Cal. 524; *Hill v. Bowman*, 35 Mich. 192; *Post & Tribune Co. v. Reilly*, 46 Id. 459; *Bohn v. Brown*, 33 Id. 263.

*Fletcher & Wanty*, for defendant National City Bank.

*McGarry & Ford*, for defendants Webber.

GRANT, J. The bill in this case was filed to foreclose a chattel mortgage, executed by defendant Steele to complainant. The other defendants were creditors of defendant Steele, obtained judgments against him, and, under executions, levied upon the property covered by the mortgage. The case was heard in open court, and decree rendered holding the mortgage to be a valid lien upon the property; that the amount due thereon was $40,768.07; that the amount due from Steele to the Webbers was $5,354.25; that the amount due the defendant bank was $5,311.71; and that the liens of these defendants as judgment creditors of Steele were superior to, and took precedence of, the mortgage lien of the complainant.

Steele was possessed of a large amount of property, both real and personal; and his credit was good. He was, however, heavily in debt, and on July 12, 1889, he executed conveyances of all his real and personal property to various persons, either as payment or as security. Among these was the chattel mortgage in question, and a real estate mortgage, executed by Steele to Cutler, for the sum of $25,000. The condition of the chattel mortgage is that—

"Steele shall pay or cause to be paid the said D. Cutler all notes held by him, together with all notes of said Steele upon which said Cutler is indorser; also any notes of said Steele held by the First National Bank of Grand Haven, Michigan, and any and all renewals thereof, together with any indorsements, loans, or advances hereafter made by said Cutler to said Steele, or liabilities incurred in his behalf at the maturity of notes or the renewal

thereof,—then this instrument shall be void and of no effect."

The real-estate mortgage was given to secure $25,000, which Steele obtained from Cutler at that time, and for which he gave his promissory note. Steele lived in Ionia, and Cutler in Grand Haven, where the mortgages were executed and delivered.

The defendants the Webbers were bankers, to whom Steele was indebted at that time in the sum of $10,000, which became due July 13. Mr. Steele says that about July 1 he saw defendant George W. Webber in regard to renewing the note; that they finally agreed that Steele should pay $3,000 or $3,500, and give two notes for the balance, running 60 and 90 days. Steele returned to Ionia, and on the 13th of July paid the Webbers $5,000 out of this $25,000 he had received from complainant, and gave them a note for $5,000, due in 90 days.

July 24, 1889, the defendant bank renewed a note for $5,000 made by the W. Steele Packing & Provision Company, and indorsed by defendant Steele. The original note was executed and discounted March 20. This note went to protest, and the bank obtained judgment against Steele thereon.

All these conveyances and mortgages were not recorded until August 29, when they were all placed upon record at the same time, except one deed, which was not recorded till August 30 in Montcalm county. Steele meanwhile continued to carry on his business, and the defendants the Webbers and the bank had no notice or knowledge of these conveyances until some time after the execution of the notes on which they obtained judgments.

Common prudence in business affairs would have prevented these defendants from renewing these notes had they been aware of this chattel mortgage and the other conveyances executed at the same time. It must be

assumed, therefore, that as prudent business men the defendants accepted these renewal notes in reliance upon the non-existence of these conveyances. It has already been decided by this Court that such unrecorded mortgages are void as against creditors of the mortgagor who have accepted such renewals, or have extended time of payment on old debts for a definite period. *Root v. Harl,* 62 Mich. 422. This may therefore be considered the settled rule in this State.

As to the Webbers, the first question is, when was the note renewed? The complainant insists that it was when they had promised to take new notes for $6,500 if Steele would pay $3,500. But no enforceable agreement was then made. The agreement was not consummated until the money was paid, and the renewal note delivered and accepted. A knowledge on the part of the Webbers of the true state of affairs would certainly have prevented its consummation. By no fair construction of the statute, or any rule of construction, can this renewal be held to date back to this parol agreement so as to take the transaction without the statute. The date of the execution of the renewal note must be taken as the date of the transaction. It was then that the time was actually extended for the payment of the unpaid balance, and that they had a right to rely, under the statute, upon the non-existence of any such liens.

The next point urged against the claim of the Webbers is that complainant could not by the exercise of due diligence have filed his mortgage with the township clerk before Steele paid the Webbers the $5,000, and gave them the renewal note for the balance. Complainant is not in position to raise this question. He did not exercise due diligence, nor did he intend to. It was his duty towards the creditors of Mr. Steele to exercise that diligence. They were entitled to prompt action on his part in order

that they might determine what course to pursue in their dealings with Mr. Steele. The case of a mortgagee acting with the promptness required by law and fair dealings is not before us. It is unnecessary, therefore, now to determine the rights of a diligent mortgagee as against the rights of a diligent creditor of the mortgagor.

It is conceded that the mortgage was void as to the defendant bank if it was a creditor of Steele within the meaning of the statute. But complainant insists that Steele did not become a debtor to the bank until the maturity and protest of the note. It is true that the ultimate liability of Steele depended upon a contingency; still he had made a contract fixed and definite. The bank was under no obligation to pursue the maker of the note, but might look solely to the indorser. It is just as important in commercial transactions that the financial condition of indorsers, guarantors, and sureties be known as that of the principal debtors. In fact, credit is often given in reliance upon their standing rather than upon that of the principal debtors. We are therefore of the opinion that the term "creditors," used in the statute, includes those who have entered into contracts with parties as indorsers, guarantors, or sureties. Such contracts in the commercial world are every-day transactions. It is impossible to believe the Legislature did not enact this statute with a view to protect creditors against all those upon whose promises, whether principal or contingent, they had parted with valuable considerations.

Decree of the court below is affirmed, with costs.

MORSE, McGRATH, and LONG, JJ., concurred.

CHAMPLIN, C. J., took no part in the decision.