Spellman v. Beeman—Syllabus.

AGNES R. SPELLMAN, *Appellant,* v. H. L. BEEMAN, *Appellee.*

Opinion filed Dec. 21, 1915.

1. Under Section 2496 of the General Statutes of 1906, a subsequent mortgagee of personal property occupies the same position with reference to a prior unrecorded mortgage upon the chattel as a subsequent purchaser.

2. Section 2496 General Statutes of 1906 makes possession by the mortgagee of mortgaged personal property essential to the validity of the mortgage as to creditors and subsequent purchasers for a valuable consideration and without notice unless it be recorded.

3. A chattel mortgage once void as to a subsequent mortgagee for a valuable consideration and without notice of the prior unrecorded mortgage is not restored to validity, as against the second mortgage in the absence of fraud on the second mortgagee's part, by filing it for record before the second mortgage is filed for record.

Appeal from Circuit Court, Orange County; Jas. W. Perkins, Judge.

Decree affirmed.

*Dickinson & Dickinson,* for Appellant;

*Davis & Giles,* for Appellee.

ELLIS, J.—This is an appeal from a decree of foreclosure of a chattel mortgage. W. M. Brittain on July 7, 1913, was indebted to H. L. Beeman in the sum of

$616.53, and being so indebted executed and delivered to Beeman his three promissory notes for amounts aggregating that sum. In order to secure the payment of the notes Brittain executed and delivered to Beeman on July 26, 1913, a mortgage on a certain automobile. The mortgage was filed for record in the office of the Clerk of the Circuit Court for Orange County on September 26, 1913, and the mortgage was recorded in "Miscellaneous Book 23, page 236" of the Public Records of Orange County. The record of the mortgage was indexed in the index of mortgages kept by the Clerk in his office for that purpose, "being the same book in which all mortgages filed in his office for record are indexed." After recording the mortgage the Clerk returned it to Beeman, who kept it in his possession until he turned it over to his attorney for foreclosure. It was never recorded in any other book in the office of the Clerk of the Circuit Court for Orange County.

On the 14th day of May, 1913, Brittain was indebted to Agnes R. Spellman in the sum of $800.00, evidenced by his promissory note to her of that date. To secure the payment of that note he executed and delivered to Agnes R. Spellman a mortgage on the same automobile above mentioned. The mortgage was filed for record in the office of the Clerk of the Circuit Court for Orange County on the 5th day of June, 1914, and was recorded in "Miscellaneous Book 23, page 637" of the Public Records of Orange County. After it was recorded it was returned to Agnes R. Spellman by the Clerk, and she again filed it for record on the 21st day of September, 1914, and it was by the Clerk recorded in "Mortgage Book Number 27, page 554" of the Public Records of Orange County. When the mortgage was first filed and

recorded it was "duly indexed in the index of mortgages," and when filed the second time and recorded in the mortgage book it was "indexed in the index of mortgages of Orange County." "Neither H. L. Beeman nor Agnes R. Spellman knew of the other's mortgage at the time of making and executing the respective mortgages, nor had any knowledge thereof, or any knowledge that the other had such mortgage." Nor was the automobile delivered to either Agnes R. Spellman or H. L. Beeman, or any one for them, nor had either of them had possession of it under their respective mortgages.

The foregoing facts were by stipulation between the Solicitors for Agnes R. Spellman and H. L. Beeman agreed upon and submitted to the court upon the final hearing.

On the 8th day of October, 1914, H. L. Beeman filed his bill in chancery to foreclose his mortgage against W. M. Brittain, making Agnes R. Spellman party defendant. Copies of the notes and the original mortgage were attached to the bill as exhibits.

Agnes R. Spellman answered the bill, admitting the execution of the mortgage from Brittain to Beeman and its record on the 26th day of September, 1913, in "Miscellaneous Book 23, page 236," and setting up her mortgage from Brittain dated the 15th day of May, 1913, to secure a debt which he owed to her of $800.00, as evidenced by his promissory note to her for that amount, and the record of the mortgage as above recited. The answer denied that the complainant's mortgage from Brittain had ever been properly recorded. That after being recorded in "Miscellaneous Book" as stated it was returned to Beeman and never refiled or "recorded in any proper book, namely, Book of Mortgages," and denied

that her mortgage was a secondary lien to that of the complainant.

Brittain filed no plea, answer or demurrer, and an order taking the bill as confessed was duly entered against him. The complainant filed a replication to the answer of Agnes R. Spellman, and the cause was heard upon the bill of complaint, answer of Agnes R. Spellman, Replication, and the stipulation as to the facts above mentioned.

The Chancellor rendered his decree against the defendants ordering them to pay to the complainant the sum of $695.86 with legal interest from the date of the decree, together with seventy-five dollars solicitors' fees and costs within three days, and in default thereof, that the automobile be sold at public sale to the highest bidder for cash after notice; appointing a master to conduct the sale and directing him to pay the complainant from the proceeds of the sale the amount decreed to be due with solicitors' fees and costs, and to bring the surplus money, if any, into court to abide its further order, and that the defendants be barred and foreclosed from all equity of redemption in and to the mortgaged property. From this decree Agnes R. Spellman appealed to this Court, and assigned eight errors.

The first and second assignments of error present the question of the superiority of the Beeman mortgage lien over that held by Agnes R. Spellman.

W. M. Brittain's debt to Agnes R. Spellman antedated his debt to H. L. Beeman by nearly two months. Brittain's mortgage to Agnes R. Spellman was executed two months and eleven days prior to the execution of his mortgage to Beeman. Beeman filed his mortgage for record eight months before Agnes R. Spellman filed her's for record. In the meantime neither had actual knowl-

edge of the other's mortgage upon the automobile. Both mortgages were recorded in Miscellaneous Book 23 of the Public Records of Orange County, Beeman's mortgage being recorded on page 236, and Agnes R. Spellman's on page 637. They were both indexed in the index of mortgages kept in the Clerk's office for that purpose, and being the same book in which all mortgages that were filed in that offiec for record were indexed.

Beeman's mortgage was returned to him after being recorded in the miscellaneous book, and he never had it refiled for another record. Agnes R. Spellman, however, had her mortgage refiled on September 21st, 1914, and recorded in Mortgage Book Number 27, on page 554, and it was again indexed.

Section 2496, General Statutes of 1906, provides that: "No Chattel Mortgage shall be valid or effectual against creditors or subsequent purchasers for a valuable consideration and without notice unless it be recorded, or unless the property included in it be delivered to the mortgagee and continue to remain truly and bona fide in his possession."

Section 2488 General Statutes of 1906, provides that: "All instruments relating to real and personal property which are authorized or required to be recorded shall be deemed to be recorded from the time the same are filed with the officer whose duty it is to record the same." The statute relating to the duties of the Clerk of the Circuit Court as recorder of deeds, provides, among other things, that "He shall be in the county in which he is Clerk the recorder of deeds and of all other papers not pertaining to Circuit Court which he may be required by law to record. For the purpose of such recording he shall keep: * * * A Record of Mortgages in which he shall record all mortgages on real or personal property and powers of

attorney embracing a power to execute mortgages which may be in form entitled to record. * * * Indexes, alphabetical, direct and inverse, to all the foregoing books." Sec. 1832, Gen. Stats. of 1906.

Prior to the adoption of the Revised Statutes in 1892, there was no statute of this State requiring the Clerk to record chattel mortgages in any specifically designated book in order to give constructive notice of their existence. So that the record of a chattel mortgage in "Miscellaneous Record Book" was a valid record of it and gave constructive notice of its existence, assuming that its execution had been properly acknowledged to entitle it to record. See Ivey v. Dawley, 50 Fla. 537, 39 South. Rep. 498. In that case, however, Section 2488 of the General Statutes which was Section 1977 of the Revised Statutes, was not construed and its effect was not considered.

This mortgage from Brittain to Beeman which was attached to the bill of complaint as Exhibit "D" and made a part of the bill, bore the following endorsement: omitting the names of the parties, character and date of the instrument: "Filed for record this 26th day of Sept. 1913, and recorded in Misc. Book 23, page 236 of the Public Records of Orange County, Florida, Record verified. B. M. Robinson, Clerk, by C. A. Vivian, D. C."

It is clear that at the time Beeman obtained his mortgage from Brittain, the mortgage held by Agnes R. Spellman from Brittain was not valid or effectual against Beeman, because the Spellman mortgage had not been recorded, nor filed for record. Secs. 2496, 2488 Gen. Stats. of 1906. A subsequent mortgagee is on the same footing as a subsequent purchaser under Section 2496 of the General Statutes. See Manny v. Woods, 33 Iowa 265; Plaisted v. Holmes, 58 N. H. 619; 5 Am. & Eng. Ency. Law (2nd ed.) 1014; Van Winkle v. Crowell, 146 U. S.

42, 13 Sup. Ct. Rep. 18; Sheets v. Poff, 123 Iowa 714, 99 N. W. Rep. 573; Jones on Chattel Mortgages (5th ed.) §493.

A chattel mortgage is only a specific lien upon the property described in the mortgage and is not a conveyance of the legal title or right of possession, yet Section 2496 of the General Statutes makes possession by the mortgagee of the mortgaged property essential to the validity of the mortgage as against creditors and subsequent purchasers for a valuable consideration and without notice unless it be recorded.

The record of the mortgage therefore is a substitute for the possession of the property by the mortgagee. 6 Cyc. 1097; 5 R. C. L. "Chattel Mortgages", §35; Cardenas v. Miller, 108 Cal. 250, 39 Pac. Rep. 783; Second Nat. Bank of Monmouth v. Gilbert, 174 Ill. 485, 51 N. E. 584; Moors v. Reading, 167 Mass. 322, 45 N. E. Rep. 760; Jones on Chattel Mortgages (5th ed.) §§176-178; Cook v. Mann, 6 Colo. 21.

Under the Common Law possession of property by the mortgagee under a chattel mortgage was necessary to its validity. The mortgagee acquired title to the property subject to a defeasance. While under our statute it is a mere lien yet the recording laws require possession by the mortgagee or record of the instrument as essential to good faith and protection of creditors and subsequent purchasers against fraud. In some States failure to take possession of the property by the mortgagee or failure to record the instrument is made evidence of fraud as to creditors or subsequent purchasers subject to rebuttal by evidence of good faith, but in this State our statute renders such failure by the mortgagee to take possession of the property or to record the instrument conclusive of its invalidity as to creditors and subsequent purchasers for a

valuable consideration and without notice. If it were not so, the statute requiring the record of the mortgage or possession of the property by the mortgagee could be utilized to bring about successfully the fraud which it was designed to prevent; the setting up of secret mortgages against persons dealing with the mortgagor on the faith that his property was not the incumbered. "The statute was designed to require publicity to be given to chattel mortgages for the protection of persons mentioned therein."

The Spellman mortgage being void as to Beeman continued to be void as to him, and the subsequent taking of possession by Agnes R. Spellman of the mortgaged property or the record of her mortgage after Beeman had for a valuable consideration and without notice of her mortgage acquired his, would not restore the validity of her mortgage as against him. See Karst v. Gane, 136 N. Y. 316, 32 N. E. Rep. 1073; Stephens v. Perrine, 143 N. Y. 476, 39 N. E. Rep. 11; Keet & Rountree Dry Goods Co. v. Brown, 73 Mo. App. 245; Williams v. Kirk, 68 Mo. App. 457; Landis v. McDonald, 88 Mo. App. 335; Sidener v. Bible, 43 Ind. 230; Williamson v. New Jersey S. R. Co., 28 N. J. Eq. 277; Brown v. Harris, 67 N. J. L. 207, 50 Atl. Rep. 689; Cutler v. Steel, 85 Mich. 627, 48 N. W. Rep. 631.

In the case of Karst v. Gane, *supra,* Chief Justice Andrews in speaking for the court upon the construction of a statute similar to ours, said: "The filing stands as a substitute for immediate delivery and an actual and continued change of possession of the property, and avoids the conclusive presumption of fraud which would otherwise attach to the instrument under the act of 1833 in the absence of delivery and a change of possession of the

mortgaged property. Some time will necessarily elapse between the execution and filing of the mortgage. Where it appears that due diligence was exercised in filing the mortgage, and there was no unnecessary delay and no actual intervening lien has been acquired, there would seem to be no ground upon which subsequent lien holders could question the validity of the mortgage under the statute of 1833. The filing under these circumstances would be immediate and make the mortgage valid as against liens subsequently acquired. But a delay of six weeks in filing the mortgage is not a compliance with the act. There were no circumstances rendering so long a delay necessary. There can be no doubt that if during the delay in filing, a lien had been acquired by a creditor, the mortgage as to such lien would be void. The mortgage was, however, filed before the plaintiff's judgments and executions were obtained. This did not restore the validity of the mortgage as against creditors whose debts were in existence during the default in filing the mortgage, although judgments or executions were not obtained until after the mortgage was in fact filed."

It is unnecessary to consider the effect of the record of Beeman's mortgage in the Miscellaneous Record Book, nor the subsequent record of the Spellman mortgage in the mortgage record, because in the view we have of the case the failure of Beeman to record his mortgage did not restore to validity the mortgage of Agnes R. Spellman, who by her conduct in failing to record her mortgage, misled and deceived Beeman and induced credit to be extended to Brittain. The purpose and policy of the act was to protect one thus misled to his injury just as if the first mortgagee and his mortgagor had contrived by a system of fraudulently concealing the security or lien in-

duced others to extend to the mortgagor credit upon the faith of his apparently unincumbered property.

It is not necessary under the statute that there be a fraudulent intent or purpose in keeping the mortgage off the record. The statute does not require such a condition. The statute conclusively presumes that the effect of keeping the mortgage off the record and the failure of the mortgagee to take possession of the property, is to deceive and mislead the creditors and subsequent purchasers without notice and for a valuable consideration and declares such mortgage to be invalid as against such creditors and subsequent purchasers.

In the view we have of the case, it is unnecessary to discuss the remaining assignments of error.

The decree of the Chancellor is affirmed.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and WHITFIELD, JJ., concur.