HOBSON, Judge.
Plaintiffs-appellants, various shoe and clothing companies, appeal a final summary judgment, in chancery, entered in favor of defendants-appellees and appeal the denial of their motion for summary judgment and the dismissal of their cause with ■ prejudice.
On May 1, 1963, Ernest L. Troke, an appellee herein, sold a clothing store known as “The Haberdashery” to William Phillips for $12,000. Cash in the sum of $1,000 was paid down and a promissory note secured by a chattel mortgage was given for the balance. The chattel mortgage covered the store’s assets, including stock, inventory as from time to time on hand, fixtures, and equipment. The note was payable in monthly installments of $100 per month, commencing June 1, 1963, and included interest at the rate of 6% per annum.
Merchandise was furnished by the plaintiffs below to William Phillips on credit during various periods after May 1, 1963, leaving balances due as follows:
Merit Clothing Co. May, 1964 to
March, 1966 .$2,103.05
The Arrow Company September,. 1965 to
January, 1966 . 4,084.05
Parkton Company February, 1966 to
March, 1966 . 931.86
* Laverenz Shoe Co. From April, 1966 . 632.94
*Truval Shirt Co. From September,
1965 . 2,462.85
* Freeman Shoe Co. From January, 1966 . 245.70
* (Did not appeal)
Before extending credit, appellants obtained credit reports on William Phillips from Dun & Bradstreet. These reports failed to reflect any note or mortgage outstanding against William Phillips in his business. By affidavits, appellants have asserted that they would not have extended credit had they known of the existence of the note secured by the chattel mortgage on the inventory of the business. Mr. Troke did not in fact record the note and mortgage until June 23, 1966.
In May, 1966, William Phillips left for Viet Nam to work in a civilian capacity. Appellees Edward Lees and Keith Henry were left working in the clothing store as employees. All installments due under the note to Mr. Troke were paid through June, 1966. None have been made since that time. After recording his mortgage on June 23, 1966, Ernest Troke (on June 29, 1966) received a Bill of Sale to all of the inventory and business from Ernestine G. Phillips in her individual capacity and as attorney-in-fact for her husband, William Phillips. No new consideration was given for the Bill of Sale and no attempt was made to comply with the Bulk Sales Act, *781 Chapter 726, Florida Statutes, F.S.A. Mr. Troke simply received this Bill of Sale in satisfaction of a pre-existing debt, to-wit: the note and mortgage executed in May, 1963.
Appellees Lees and Henry • continued to operate the store and changed its name to “O. Henry’s” in July, 1966. Appellee Troke agreed to sell his interest in the business to Lees and Henry after the disposition of all creditors’ claims.
In June, .1966, when payments on the note to Ernest Troke were discontinued, the balance due on the note was $9,229.
At the time of the sale of the merchandise to Mr. Troke, the business was indebted to 23 different creditors, including the three who are the appellants in this cause, in the amount of $26,391.94. This amount also included the $9,229 owed Mr. Troke. An inventory of the merchandise was taken at the time of the transfer to Mr. Troke and the wholesale value thereof was determined to be $10,217.53, a portion of which was represented by outdated and obsolete merchandise.
Appellee Keith Henry died on April 19, 1968, and Richard C. Williams was granted Letters of Administration c. t. a. in his estate on May 14, 1968, and is substituted as a party appellee herein.
Two questions are presented for our determination:
I. IS A VOLUNTARY CONVEYANCE OF ALL OF THE STOCK OF GOODS IN A RETAIL BUSINESS IN SATISFACTION OF A DEBT EVIDENCED BY AN UNRECORDED CHATTEL MORTGAGE SUBJECT TO CHAPTER 726, FLORIDA STATUTES, 1965, COMMONLY KNOWN AS THE BULK SALES ACT?
IF CONVEYANCE IS SUBJECT TO THE BULK SALES ACT, CAN THE CONVEYANCE BE SET ASIDE AS FRAUDULENT AND THE ASSETS BE SUBJECT TO THE CLAIMS OF GENERAL UNSECURED CREDITORS EXISTING PRIOR TO THE CONVEYANCE?
II. IS A VOLUNTARY CONVEYANCE OF ALL OF THE STOCK OF GOODS IN A RETAIL BUSINESS IN SATISFACTION OF A DEBT EVIDENCED BY A CHATTEL MORTGAGE EFFECTIVE TO DEFEAT THE CLAIMS OF GENERAL, UNSECURED CREDITORS EXISTING PRIOR TO THE CONVEYANCE, AND WITHOUT KNOWLEDGE OF THE MORTGAGE, WHEN THE SAID CHATTEL MORTGAGE IS NOT RECORDED AS REQUIRED BY SECTION 698.01, FLORIDA STATUTES, 1965?
The answer to each part of question one is in the affirmative. Section 726.05, Florida Statutes, 1965, F.S.A., provides:
“What sales deemed fraudulent; proviso. —-Any sale or transfer of a stock of goods, wares or merchandise out of the usual or ordinary course of business or trade of the vendor, or whereby substantially the entire business or trade theretofore conducted by the vendor shall be sold or conveyed, or attempted to be sold or conveyed, to one or more persons, shall be deemed a fraudulent transaction or transfer in bulk in contemplation of §§ 726.02 — 726.06, provided, that nothing contained in said sections shall apply to sales by executors, administrators, receivers or any public officer under judicial process.”
The parties have not cited, nor has our research disclosed, any Florida case directly on point and construing §§ 726.02 — 726.06, Florida Statutes, 1965, F.S.A. It should also be noted here that all of Chapter 726, Florida Statutes, F.S.A., has been repealed and supplanted by the Uniform Commercial Code, effective January 1, 1967. How *782 ever, this appeal is governed by the law as it existed at the time of the transaction here involved.
From the wording of the above statutory provision, it is clear that any transfer of a stock of goods whereby substantially the entire business theretofore conducted by the vendor shall be conveyed shall be deemed to be a fraudulent transaction if there is noncompliance with the provisions of the act.
 It must now be decided whether the conveyance in the case sub judice is a “transfer” within the purview of § 726.-05, supra. In deciding, as we do, that a voluntary conveyance of all the stock of goods in a retail business in satisfaction of a pre-existing debt evidenced by a chattel mortgage is within Chapter 726. Florida Statutes, 1965, F.S.A., known as the Bulk Sales Act, we are following a similar case considered by the Arkansas Supreme Court in Ritchie Grocer Co. et al. v. W. D. Sanders et al., Ark.1956, 226 Ark. 775, 294 S.W.2d 54, 59 A.L.R.2d 1110. The Supreme Court of Arkansas speaking through Mr. Justice Holt stated at page 56:
“ * * * Here we have the attempt of the mortgagor, Sanders, to transfer and deliver back to Ritchie his stock of merchandise in satisfaction of his preTexist-ing debt to Ritchie, at a time when Sanders had incurred the above debts to appellants, wholesale grocers. Since our bulk sales statute above applies to any ‘transfer’ we hold that the transfer here, in satisfaction of a pre-existing debt, violated the terms of our bulk sales statute. This appears to be the majority view of the courts in construing bulk sales statutes. In Michigan Law Review, Vol. 35, (1936-37) p. 748, where many cases are collected, we find this language:
“ ‘A majority of courts, however, give a much broader scope to these laws (bulk sales) and ascribe to them the additional purpose of securing equality among creditors. In conformity with this view, the bulk sales laws are held applicable to a preferential transfer on the theory that one purpose of the statute is to give all creditors of the transferor an ample opportunity to protect their interests before the consummation of the transfer, otherwise the purpose of the act will be defeated.
“ ‘A transfer of goods is none the less a preferential transfer because it is made to one from whom the identical goods were previously purchased and because it is made in acquittance of the obligation incurred by such purchase. That is, if S sells goods to B who subsequently returns them to S because of his inability to pay therefor, such a return is a, preferential transfer on the part of B.’ ”
Having concluded that the conveyance in the case sub judice is a “transfer” within the meaning of § 726.05 of the Bulk Sales Act (Chapter 726, Florida Statutes, 1965, F.S.A.), can said conveyance be set aside as fraudulent? As previously stated, the answer is in the affirmative.
Ernest Troke made no attempt to comply with § 726.02, Florida Statutes, 1965, F.S.A., requiring him to demand and receive from the transferor thereof a written statement under oath of the names and addresses of all the creditors of said trans-feror, together with the amount owed each and made no attempt to comply with § 726.03, Florida Statutes, 1965, F.S.A., requiring him at least five days before the completion of the purchase to give notice personally or by registered mail to each of said creditors of the said proposed transfer, the price to be paid therefor, and the terms and conditions thereof.
However, § 726.04 of the Bulk Sales Act merely provides that a transfer without compliance with its requirements “* * shall, as to any and all creditors of the vendor, be presumed to be fraudulent. ” This is only a prima facie presumption raised from the relevant facts. This pre *783 sumption may be rebutted by due procedure under the law. Goldstein v. Maloney, Fla., Div. A, 1911, 62 Fla. 198, 57 So. 342.
In other words, once it is shown that the conveyance, as here, is a “transfer” of goods, wares or merchandise within the meaning of § 726.05, supra., and once noncompliance with §§ 726.02 — .03, supra, is established, then § 726.04, supra, raises a prima facie presumption of fraud which can be rebutted.
Prima facie evidence is such as in the judgment of the law is sufficient to establish the fact, and, if unrebutted, remains sufficient for that purpose. Thomas v. Williamson, 51 Fla. 332, 40 So. 831 (1906); and Atlantic Land & Imp. Co. v. Lee, 93 Fla. 579, 112 So. 549 (1927).
The appellees urge that where the purpose of a creditor (such as Mr. Troke) is to secure his debt and the property transferred is not worth materially more than the debt, the transfer of assets by an insolvent debtor or one whose insolvency is imminent to a creditor such as Mr. Troke in payment of an antecedent debt will not generally be considered fraudulent, even though such a creditor might know that the debtor is insolvent; that the transfer is of all the debtor’s property; that the debtor is actuated by desire to defeat claims of other creditors; and that the effect of the transfer will be to defeat such claims, provided such a creditor acts in good faith, but if he takes the conveyance for purpose of aiding debtor in his fraud, then such conveyance is void. In support of this, ap-pellees cite the case of Nelson v. Cravero Constructors, Inc., Fla.App.1960, 117 So.2d 764, and assert that the mere proof of the transfer of assets by an insolvent debtor or one whose insolvency is imminent, to a creditor in payment of an antecedent debt does not in itself constitute fraud or that the transfer was intended by the debtor to defeat the claims of other creditors. The above correctly states the law for the transfer involved in the Nelson case. However, the Nelson case has no application, as in that case the transfer was of real property and not of an inventory of goods, wares or merchandise as is involved in the case sub judice. Being real property, the transfer did not come within the purview of § 726.-05, supra.
The record-on-appeal establishes that a prima facie presumption of fraud has arisen as a result of the failure of ap-pellee Troke to comply with the requirements of the Bulk Sales Act. This presumption is a rebuttable presumption and therefore the summary judgment entered in favor of the appellees must be reversed with the provision that the appellees, upon remand, be given the opportunity to rebut such prima facie presumption of fraud.
The answer to question two is in the negative. The transfer in the case sub judice in satisfaction of a pre-existing debt evidenced by an unrecorded note and chattel mortgage will not operate to defeat the claims of general, unsecured creditors existing prior to the conveyance when said creditors were without knowledge of the chattel mortgage and said chattel mortgage was not recorded as required by § 698.01, Florida Statutes, 1965, F.S.A., which provides:
“To be recorded. — No chattel mortgage shall be valid or effectual against creditors or subsequent purchasers for a valuable consideration and without notice unless it be recorded, or unless the property included in it be delivered to the mortgagee and continue to remain truly and bona fide in his possession. ”
The mortgagee, Ernest Troke, did not have possession of the property covered by the chattel mortgage during the period in which credit was extended by the appellants. The recording of the mortgage is a substitute for the possession of the property by the mortgagee. Spellman v. Beeman, 70 Fla. 575, 70 So. 589, L.R.A. 1916D, 240 (1916). In other words, chattel mortgages must be placed on record to be valid against general creditors unless the *784 property covered by the chattel mortgage is in the mortgagee’s possession. Berlein v. Eddy, 89 Fla. 484, 104 So. 780 (1925); and In re Griffin, D.C., 294 F. 296.
In view of the above, it is our opinion, and we so hold, that appellee, Ernest L. Troke, cannot obtain a priority over appellants by a voluntary conveyance from William Phillips in satisfaction of an unrecorded note and chattel mortgage. It is clear from the statute and the above-cited cases that said note and chattel mortgage is void and ineffective as a matter of law as against the general creditors of William Phillips who, without notice of the note and chattel mortgage, extended credit prior to June 23, 1966, the date of recording of the chattel mortgage.
For the foregoing reasons, this cause is reversed and remanded for further proceedings not inconsistent with the views set forth herein.
LILES, C. J., and MANN, J., concur.