Central Trust Company of Illinois, Complainant and Appellee, v. Sheridan Beach Hotel Building Corporation and Albert Pick & Company, Defendants. Albert Pick & Company, Appellant.

Gen. No. 34,411.

Heard in the second division of this

court for the first district at the June term, 1930. Opinion filed December 16, 1930.

Ringer, Wilhartz & Hirsch, for appellant; Samuel E. Hirsch and Sidney J. Wolf, of counsel.

Poppenhusen, Johnston, Thompson & Cole, for appellee; James W. Hyde, Frederick Mayer and Clifton J. O'Harra, of counsel.

Mr. Justice Gridley delivered the opinion of the court.

On April 14, 1926, the Greenebaum Sons Bank & Trust Co. (hereinafter called the Greenebaum Bank) as trustee, filed its bill in the circuit court against the Sheridan Beach Hotel Building Corporation (hereinafter called the Hotel Co.) to foreclose a chattel mortgage, dated February 11, 1924, duly acknowledged and recorded on February 24, 1924, and given by the Hotel Co. to further secure the payment of its 1,300 bonds, aggregating $650,000, all dated July 20, 1922, maturing at different dates thereafter (the last bonds maturing on August 1, 1932), and bearing 7 per cent interest per annum as evidenced by interest coupons. The bill also prayed for the appointment of a receiver. The personal property included in the mortgage consisted of furnishings, utensils, equipment for hotel purposes, etc., located in or about the apartment hotel building, known as the "Sheridan Beach Hotel" at the northeast corner of Sheridan Road and Chase Avenue, Chicago, Illinois. On May 20, 1926, a receiver was appointed and he took possession of the property and has ever since been in possession. On August 4, 1926, the Hotel Co. filed its answer. More than a year after the receiver had taken possession, Albert Pick & Company (hereinafter called Pick & Co.) on September 16, 1927, recovered a judgment against the Hotel Co. for $71,302, upon which execution was issued, and on Feb-

ruary 28, 1928, Pick & Co. was granted leave to be made a party defendant to the bill. On March 14, 1928, it filed its answer, setting up the judgment, attacking the validity of the chattel mortgage and claiming a first lien on the property. On October 20, 1928, the cause was referred to a master to take evidence and report the same, together with his conclusions of law and fact, and after a hearing the master, on January 30, 1930, filed his report in which after making numerous findings he concluded that complainant's chattel mortgage was a valid one and constituted a prior lien on the property as against the lien of Pick & Co. by virtue of its said judgment, and that the equities of the cause were with complainant. He recommended that a decree of foreclosure be entered in accordance with the prayer of the bill. The overruled objections of Pick & Co. to the report were ordered to stand as exceptions, and on March 21, 1930, the court overruled the exceptions, confirmed the master's report and entered the decree of foreclosure which Pick & Co. by this appeal seeks to reverse.

The material facts as shown by the evidence and as found by the court are as follows: On July 12, 1922, the Hotel Co., being desirous of obtaining a building loan for the erection and equipment of the hotel building on its said real estate, entered into a written loan agreement with the Greenebaum Bank, whereby a bond issue of $650,000, to be secured by a trust deed on the real estate, was to be made, and, after the erection of the building, to be *further* secured by a chattel mortgage on the personal property and equipment to be placed in the building. It is stated in the agreement, *inter alia,* that the Hotel Co. will equip the building with all necessary machinery, fixtures, utensils and other equipment suitable for the operation of such a building and of a quantity and quality to be approved by the Greenebaum Bank. After providing for the

giving of the trust deed it is stated that the bonds "shall be *further* secured by a chattel mortgage," of such form and containing such covenants as shall be satisfactory to the Greenebaum Bank, upon said personal propery and equipment, together with all renewals or replacements thereof, and "which chattel mortgage shall contain adequate covenants by us (the Hotel Co.) to continue in force the lien of said mortgage by renewal or re-execution of the mortgage until the indebtedness evidenced by said bonds has been fully paid." It is further stated in the agreement that the Greenebaum Bank shall not be required to pay out any of the proceeds of the loan until proof is furnished to its satisfaction that funds had been provided by the Hotel Co., through other sources or through credit or other financial arrangements, so that the balance of the loan may be sufficient to fully complete the building, and pay for all the furnishings, utensils and equipment thereof, free and clear of all liens and incumbrances which may be superior to the trust deed and chattel mortgage securing the bonds. On July 20, 1922, the bonds were executed by the Hotel Co. and also the trust deed securing them, recorded August 2, 1922. On the bonds there is a statement that "the payment hereof, with interest thereon, is further secured by a chattel mortgage," conveying to the Greenebaum Bank, as mortgagee, all furnishings, utensils, hotel equipment, etc., contained in or about the building on said premises, "with all renewals and replacements thereof, for a full description of which . . . said chattel mortgage, and the terms and conditions under which this bond is issued, secured and held, reference is made to said deed of trust and chattel mortgage."

In January, 1923, before the proceeds of the loan were paid out by the Greenebaum Bank, a conference was had between Edgar N. Greenebaum, its vice president, David Frank, vice president of Pick & Co., and

Robert W. Dunn, attorney for the Hotel Co., at which there was discussion as to the sale by Pick & Co. to the Hotel Co. of the furnishings, utensils, hotel equipment, etc., to be secured by a chattel mortgage, and it was verbally agreed that Pick & Co. was to receive, in payment of said personal property, $40,000 in cash, in two instalments of $20,000 each, and notes of the Hotel Co., aggregating $60,000, to be collaterally secured by $90,000 worth at par of *second* mortgage bonds to be issued by the Hotel Co., and that the indebtedness of Pick & Co. was not to be secured by any chattel mortgage on the property, because such a mortgage was to be given by the Hotel Co. to the Greenebaum Bank in further security of said *first* mortgage bonds of $650,000, as provided in said loan agreement of July 12, 1922. This verbal agreement was afterwards embodied in certain letters which passed between the interested parties and which were introduced in evidence on the hearing before the master. In pursuance of this agreement and at the direction of the Hotel Co., the Greenebaum Bank, out of the proceeds of said loan, made the two cash payments of $20,000 to Pick & Co.,— one on January 31, 1923, and the other on August 8, 1923, and at said times Pick & Co. signed and delivered certain waivers of mechanic's liens on the land and building covered by said deed of trust, for said personal property so to be furnished and delivered to the building. And on September 15, 1923, the Hotel Co. executed and delivered to Pick & Co. its 30 notes, each for $2,000 and aggregating $60,000, and on October 18, 1923, the Greenebaum Bank, in pursuance of said agreement and upon the written direction of the Hotel Co., delivered to Pick & Co. $90,000 worth at par of said second mortgage bonds of the Hotel Co. as collateral security for its said notes aggregating $60,000. Said personal property, so sold by Pick & Co. to the Hotel Co., was delivered to the hotel building between

January 31, 1923, and June 16, 1924, and most of it prior to February 11, 1924, the date of the chattel mortgage. No payments were made by the Hotel Co. to Pick & Co. on account of the property so furnished, or on account of said collateral notes after January 6, 1924. As soon as practicable, about February 11, 1924, and after most of the property had been delivered to and placed in the building, the chattel mortgage here sought to be foreclosed was drafted, executed and recorded. Subsequent to the execution and delivery of the bonds, and prior to the filing of the present bill, all of the bonds, aggregating $650,000, were sold and transferred to one Michael E. White and, when said bill was filed, he was the owner thereof.

Bonds Nos. 1 to 40, inclusive, matured on August 1, 1924, and bonds Nos. 41 to 90, inclusive, matured on August 1, 1925. The Hotel Co. failed to pay any of these bonds, or the matured interest coupons on them or on other bonds, and the default in payment continued for more than 30 days. Thereafter the Greenebaum Bank, as trustee, declared the entire bonded indebtedness to be due and payable, and on April 14, 1926, filed its bill to foreclose said *trust deed* securing all of the bonds, and, on the same day and *prior to the expiration of three years* from the recordation of said chattel mortgage on February 24, 1924, also filed the present bill to foreclose said *chattel mortgage.* Such proceedings thereafter were had in the action to foreclose the trust deed as resulted in the entry of a foreclosure decree on November 5, 1928, and on December 7, 1928, the real estate and building were sold at a master's sale, and the proceeds thereof were applied to the payment of the indebtedness evidenced by the bonds, accrued interest, etc. On December 14, 1928, a deficiency decree for $125,000 was entered against the Hotel Co., for which it was adjudged to be personally liable to the Greenebaum Bank.

In the decree appealed from the court made findings, among others, substantially as follows:

That the bonds secured by the chattel mortgage being foreclosed in this cause were merged in the decree of foreclosure of the trust deed, which decree was satisfied by the master's sale except as to the sum of $125,000, and interest thereon; that since the entry of the deficiency decree and about May 4, 1929, there was paid to complainant, as trustee under the trust deed, to apply on the amount due on the deficiency decree, the sum of $33,000; and that there is now due on the decree the sum of $94,551.91, and legal interest from May 4, 1929.

That at the time the present bill was filed (April 14, 1926) and at the time the receiver took possession of all of the property covered by the chattel mortgage (May 20, 1926), Pick & Co. "had no right or interest in said property within the meaning of Section 1 of chapter 95 of the Illinois statutes relative to chattel mortgages, and did not obtain any right or interest in said property within the meaning of said Act until September 16, 1927, when it obtained its judgment against said Sheridan Beach Hotel Corporation"; that the taking of such possession by the receiver "constituted and was a lawful taking of such property under said chattel mortgage by or on behalf of said complainant mortgagee, and makes said chattel mortgage in law valid, so far as the parties to this suit are concerned, irrespective of the requirements of section 1 of chapter 95 of said Illinois statutes."

That complainant, as such trustee and mortgagee, "has a first and prior lien" upon the property described in the chattel mortgage for the sum of $94,551.91, and legal interest thereon from May 4, 1929, and for its costs, solicitor's fees of $5,000 as found, etc., and that, subject and subordinate to complainant's lien, Pick & Co. has a second lien on the

property for the amount of its judgment of $71,302, interest and costs.

And the court adjudged and decreed that the Hotel Co., personally liable for said debt, pay to complainant, as trustee and mortgagee, within 10 days, the sum of $94,551.91 and interest thereon, the solicitor's fees awarded and the costs of suit, and that in default of such payment the property, or so much thereof as may be necessary, be sold by the master at public sale in the usual manner, etc.

The main ground urged by counsel for Pick & Co. for a reversal of the decree appealed from is that the chattel mortgage is void as against the rights and interests of Pick & Co.,—it having obtained a judgment against the Hotel Co. for $71,302, on September 16, 1927, upon which execution was issued. It is argued in substance that the mortgage is void *because* a part of the bonded indebtedness which it secured did not mature until August 1, 1932,—more than *three* years after the execution and recordation of the mortgage in February, 1924. Sections 1 and 4 of the Chattel Mortgage Act in force in February, 1924 (Cahill's St. 1923, ch. 95, ¶¶ 1 and 4, pp. 2320-1) are as follows:

"1. That no mortgage, trust deed or other conveyance of personal property having the effect of a mortgage or lien upon such property, shall be valid as against the rights and interests of *any third person,* unless possession thereof shall be delivered to and remain with the grantee, or the instrument shall provide for the possession of the property to remain with the grantor, and the instrument is acknowledged and recorded as hereinafter directed; and every such instrument shall, for the purposes of this Act, be deemed a chattel mortgage."

"4. Such mortgage . . . of personal property acknowledged as provided in this Act, shall be admitted to record by the recorder of the county in which the

mortgagor shall reside at the time when the instrument is executed and recorded, . . . and shall thereupon if *bona fide,* be good and valid from the time it is filed for record until ninety days after the maturity of the entire debt or obligation or until ninety days after an extension of the time of payment thereof made as hereinafter provided: *Provided,* that *such maturity shall not exceed three years* from the filing of such instrument for record *unless* within ninety days *after the expiration of said three years,* . . . the mortgagor and mortgagee . . . shall file for record . . . an affidavit setting forth particularly the interest which the mortgagee has by virtue of such mortgage in the property therein mentioned, and if such mortgage is for the payment of money, the amount remaining unpaid thereon, and the time when the same will become due by extension *or otherwise;* which affidavit shall be recorded by such recorder, and thereupon the mortgage lien originally acquired shall be continued and extended until ninety days after the expiration of such period of extension of the time of payment; *Provided,* such extension of the time of payment shall not exceed one year from the filing of such affidavit.''

After reviewing the provisions of the chattel mortgage, the facts here disclosed, the provisions of said Chattel Mortgage Act and of prior acts and numerous decisions thereon, the findings of the decree and the exhaustive briefs and arguments of opposing counsel, we are of the opinion that the chattel mortgage here in question is valid as between the Greenebaum Bank and the Hotel Co., and that, possession of the mortgaged property having been taken by the receiver at the instance of the Bank within three years of the execution and recordation of the mortgage and *before* the lien of the judgment of Pick & Co. had attached, Pick & Co.'s said lien is subordinate to complainant's lien on the mortgaged property for $94,551.91, interest,

solicitor's fees, costs, etc., as decreed by the circuit court. In *Cook v. Thayer,* 11 Ill. 617, there was involved the validity of a chattel mortgage given to secure a note that matured more than two years after its date. The mortgage (like the present one) provided that the property might be retained by the mortgagor until the maturity of the note. At this time a statute of Illinois (section 3, ch. 20 of the statutes of 1845, quoted in the opinion) was in force. It was contended that the provision, authorizing the mortgagor to retain the possession until default shall be made in the payment of the note, which had three years to run from the date of the mortgage, rendered the mortgage fraudulent and void in law, but the court held otherwise, saying (p. 618): "The true meaning of the statute is, that a mortgage on personal property, duly acknowledged and recorded, and containing a provision that the property may continue in the possession of the mortgagor, shall, if made in good faith and to secure an honest debt, be good and valid against creditors and purchasers for the space of two years after the same is recorded; and not that a mortgage, which has a longer period to run, is without the protection of the statute altogether. It continues valid and operative for two years whether the debt, which it is designed to secure, then becomes due or not. At the expiration of the two years, it ceases to be valid, as against creditors and purchasers, *unless the possession of the property is transferred to the mortgagee.*" In *Keller v. Robinson & Co.,* 153 Ill. 458, the decision in *Silvis v. C. Aultman & Co.,* 141 Ill. 632 (arising under the Chattel Mortgage Act of 1874, as amended in 1887) was distinguished,—the court saying (p. 465): "We think it clear that the amendment of 1891, in force when the mortgage in question was executed, was intended to, and does in clear and explicit terms, authorize the making of a chattel mortgage to secure an

indebtedness due *after* the expiration of two years from the time it is filed for record, its validity *after* the two years depending only upon filing the required affidavit within thirty days next preceding the expiration of that period.'' Furthermore, the courts of review in this State have several times construed what is meant by the clause ''as against the rights and interests of *any third person,''* as contained in the Act in question and in prior acts. In *Allcock v. Loy,* 100 Ill. App. 573, 575, it is said: ''The mortgage was a valid mortgage as between appellant and the mortgagor, . . . The requirements of sections 1, 2, 3 and 4, of the Chattel Mortgage Act apply only as to interested third persons, and do not in any manner affect the status of the parties to the instrument. The third person that may avail of the statute must have an interest in the property, such as that of subsequent purchaser, subsequent incumbrancer, lienor, judgment creditor, or an officer, bailiff or custodian in possession by virtue of a valid writ, execution or warrant.'' (Citing *Sumner v. McKee,* 89 Ill. 127, 132.) In *Ogden v. Minter,* 91 Ill. App. 11, 14, it is said: ''Our conclusion is that while the transactions are valid as between the parties, they would not be valid against third persons with respect to rights or interests that might attach *before possession should be taken* under these defectively executed instruments. Although the possession of personal property by the mortgagor may be fraudulent in law as against creditors and purchasers, by reason of the mortgage not having been properly executed, acknowledged or recorded, still if the mortgagee actually obtains possession before any other rights *attach* he will hold the same position he would if there had been no defect in the execution, acknowledging or recording, or *as if the possession had passed to him at the time the mortgage was given.''* (Citing *Frank v. Miner,* 50 Ill. 444, 448, and other cases.) In *Southern Surety Co. v. Peoples State Bank of Astoria,* 332 Ill. 362, the court,

after stating the substance of section 1 of the Chattel Mortgage Act, says (p. 367): "If this instrument was a chattel mortgage and plaintiff in error took possession of the property before any right of lien *attached,* its title under the mortgage was good against everybody, although the mortgage was neither acknowledged nor recorded as provided by statute." In the present case the bill of the Greenebaum Bank to foreclose the chattel mortgage was filed on April 14, 1926, and at its instance a receiver was appointed and that receiver took possession of all the property included in the mortgage on May 20, 1926. It was not until more than a year thereafter that the lien of the judgment of Pick & Co. of September 16, 1927, had attached. And it is the law that, where, as here, a bill to foreclose a chattel mortgage is filed by the mortgagee, asking for such foreclosure and also for the appointment of a receiver, and such receiver is appointed and takes possession of the mortgaged property before any right or lien of any third person has attached, such taking of possession of the property by the receiver as against such third person has the same effect as if possession had been taken by the mortgagee. (*Commonwealth Trust Co. v. Salem Light, Heat & Power Co.,* 77 N. H. 146, 147; *Wolcott v. Ashenfelter,* 5 New Mex. 442, 453; *Central Trust Co. of New York v. Worcester Cycle Mfg. Co.,* 86 Fed. 35, 38.) In the last cited case it is said: "Possession taken by a court through its receiver, at the instance of a mortgagee, is recognized by the courts as equivalent to the mortgagee's taking possession for this purpose. True, the court holds generally for the parties until what appears at the outset is determined by decree, but, if the decree follows, it determines the character of the possession *from the beginning.*"

And, in our opinion, there is another reason why the decree appealed from was right and should be affirmed. It appears that the Hotel Co., about the time it applied

for the loan, made an agreement with the Greenebaum Bank, wherein it was recognized that the proceeds of the loan might not be sufficient to construct the proposed building and also pay for the hotel equipment, and wherein the Greenebaum Bank retained the right to refuse to pay out the money until the Hotel Co. had provided additional funds, through other sources or through other credit or financial arrangements, sufficient to complete all of the work contemplated (viz., building *and* hotel equipment), and which, when completed, would be free from all liens superior to the trust deed and chattel mortgage, given to secure the bonds evidencing the loan. It further appears that before the money was paid out by the Greenebaum Bank, representatives of the interested parties met and had a conference; that as a result of the conference an agreement was made and thereafter consummated, as above stated in this opinion, whereby Pick & Co., out of the proceeds of the loan, received $40,000 in cash, and also certain notes, aggregating $60,000; that the chattel mortgage herein sought to be foreclosed is the same mortgage that was executed and delivered in pursuance of said agreement; and that the judgment in favor of Pick & Co., here sought to be made a superior lien to that of the chattel mortgage, was rendered upon said $60,000 in notes which were given in pursuance of said agreement. Under these circumstances we do not think that in a court of equity Pick & Co. is in any position to attack the validity of the chattel mortgage in question, or to obtain a superior lien over it as urged.

And we do not think that, under the facts and circumstances in evidence, there is any substantial merit in the further contention of counsel for Pick & Co. that the chattel mortgage should be considered void, as against the judgment lien of Pick & Co., for the reason that, although the bonds which have been as-

signed to Michael E. White state on their face that they are secured by a chattel mortgage (i. e., one purporting to be then in existence), as a matter of fact said mortgage was not then in existence but was thereafter executed, and said bonds were not *restamped* as being so secured.

The decree of the circuit court of March 21, 1930, appealed from, should be affirmed, and it is so ordered.

*Affirmed.*

SCANLAN, P. J., and BARNES, J., concur.