Collateral Finance Company, Appellant, v. I. S. Braud, Trading as Braud Motor Sales, Appellee.

Gen. No. 40,065.

Opinion filed December 30, 1938.
Rehearing denied January 13, 1939.

HAROLD J. GREEN, of Chicago, for appellant.

GOLDMAN, ALLSHOUSE & HEALY, of Chicago, for appellee; ROBERT G. DREFFEIN and M. M. LOMAN, both of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

In a garnishment proceeding instituted in the municipal court by plaintiff against defendant, as garnishee, the latter answered "no funds." Plaintiff contested the answer, which was subsequently set for hearing, and upon trial the court discharged the garnishee. Plaintiff appeals.

The uncontroverted evidence discloses that November 28, 1936, Meier Motors Company, Inc., executed a chattel mortgage on certain personal property to the Universal Dealers Company, which was not recorded until January 12, 1937. Subsequently, and prior to January 29, 1937, Universal Dealers Company took possession of the property for the purpose of foreclosing its mortgage, and on January 29 sold the property under the chattel mortgage sale to I. S. Braud, trading as Braud Motor Sales, garnishee herein, for $2,850. No question is raised as to the bona fides of these transactions. March 3, 1937, Collateral Finance Company, plaintiff herein, confessed judgment on three notes of Meier Motors, Inc., one for

$2,000, executed December 17, 1936, and the other two notes for $291.30 and $200 respectively, dated January 13, 1937, all payable to bearer and each having a power of attorney to confess judgment.

As ground for reversal, plaintiff takes the position that the mortgage, under which the garnishee purchased the chattels described therein for $2,850 and upon which his rights are predicated, was *fraudulent and void* as to the creditors of the mortgagor, because it was not recorded within 10 days as provided by the Chattel Mortgage Act, as amended in 1931; that although Braud purchased the chattels at what he supposed was a valid mortgage sale, nevertheless by reason of the delayed recordation, the creditors' rights to the chattels therein itemized or the proceeds thereof, are paramount to the rights of any other person claiming thereunder, including Braud; that even though the chattel mortgagee took possession of the chattels prior to the time that plaintiff instituted suit, but long after the mortgage was executed, and after the statutory period for recordation had elapsed, the chattel mortgagee could not thereby defeat plaintiff's claim once the plaintiff obtained judgment and commenced the instant proceeding; that the sale, and therefore Braud's purchase, was wholly without authority, and amounted to a technical conversion of the goods; that the chattels were valued at $2,850, and therefore Braud is liable in garnishment to plaintiff up to the sum of $2,850 plus interest at the rate of 5 per cent per annum from January 29, 1937, the date of the sale.

Since the controversy arises over the construction of the Illinois Chattel Mortgage Act (ch. 95, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 83.01 *et seq.*]) a summary of the statutory law and the rights of parties thereunder will be helpful to an understanding of the issues involved. Section 1 of the statute reads

as follows: "No mortgage, . . . shall be valid as against the rights and interests of any third person, unless possession thereof shall be delivered to and remain with the grantee, or the instrument shall provide for the possession of the property to remain with the grantor, and the instrument is acknowledged and recorded or filed as hereinafter directed; . . ." Under this provision of the statute, if the mortgagor delivers the chattels to the mortgagee nothing further is required to make the mortgage valid as against third persons. However, if the mortgagor retains possession of the chattels, then the mortgage must be acknowledged and recorded as provided in subsequent sections of the act.

Prior to 1931 section 4 of the statute made no provision as to the time within which recordation of a chattel mortgage was required. It read as follows: "Such mortgage . . . acknowledged as provided in this act shall be admitted to record by the recorder of the county in which the mortgagor shall reside at the time when the instrument is executed and recorded. . . ." Thus, a chattel mortgage could be recorded at any time after its execution and still be a valid lien as against the rights of third persons. Failure to record his mortgage imposed on the mortgagee only the risk that some third person might acquire a right or a lien upon the chattels prior to the time that the mortgagee asserted his lien. Under this section as originally enacted a chattel mortgage was a valid lien only from the time it was filed for record, even as against purchasers and creditors with actual notice. (*Blatchford v. Boyden,* 122 Ill. 657.) And since the only requirements for the validity of a mortgage as against third persons were a transfer of possession to the mortgagee, or a recordation of the mortgage, the courts of this State held that the mortgagee could cure defects of an improperly recorded

mortgage or one that was not recorded at all, by either taking possession of the chattels or by subsequently recording a corrected instrument before any other right or lien intervened. (*Springer v. Lipsis,* 209 Ill. 261.) In that situation, if a creditor acquired a lien upon the chattels before the defective or unrecorded mortgage was cured, by reason of the mortgagee's taking possession, the lien of the mortgage became subordinate and subject to the intervening rights of lien creditors. (*Southern Surety Co. v. People's State Bank of Astoria,* 332 Ill. 362.)

It is pointed out by plaintiff's counsel that this state of the law was obviously unfair to other than mortgage creditors, because general creditors who had extended credit to a debtor, relying on his possession of chattels against which there was no mortgage of record, often learned, before their debt had matured, that the holder of some unrecorded mortgage had cured the defect by taking possession of all the debtor's chattels and foreclosing the mortgage, thus leaving no property out of which the general creditors could satisfy their claims, and it is argued that the legislature, in recognition of the unfairness of this situation and of the opportunities for fraud which were presented, by reason of the indeterminate period during which a mortgagee under an unrecorded mortgage could maintain a secret lien, enacted an amendment to the chattel mortgage act in 1921, known as section 4A, which provided in substance that no mortgage should be valid against the creditors of the mortgagor, even though admitted to record as provided in section 4, unless it should be filed for record within 10 days of its execution, and that any such instrument not filed within the prescribed 10 days should be fraudulent and void as to creditors. The Supreme Court in *Nelson v. Hoffman,* 314 Ill. 616, held this amendment unconstitutional on the ground

that it made reference to the title only, instead of being inserted at length in the new act. However, the court, in passing upon the validity of the amended section 4A, recognized the purpose of the amendment, and commented on it as follows: "The sole purpose of section 4A was to amend section 4 so that mortgages acknowledged and recorded should be good and valid from the time of filing for record against everybody except creditors of the mortgagor, but not good and valid against such creditors unless filed for record within ten days of their execution." The opinion in *Nelson v. Hoffman* was filed in the December term, 1924, and it was not until 1931 that the legislature again passed an amendment to the Chattel Mortgage Act, and in accordance with the ruling of the Supreme Court in the *Nelson* case, incorporated the new subject matter as an amendment to section 4, by changing the first sentence of that section and making section 4 read as follows: "No mortgage . . . of personal property . . . hereafter executed shall be valid as against the creditors of the mortgagor, even though admitted to record, as hereinafter provided, unless it shall be deposited for filing or recording . . . within ten days of its execution, and any such mortgage . . . not deposited for filing or recording within ten days of the execution thereof shall be fraudulent and void as to such creditors."

The legislature thus created a new condition precedent for the validity of a chattel mortgage against the creditors of the mortgagor, namely, the filing of the mortgage within 10 days of its execution. Under the present statute, as amended in 1931, section 1 of the act refers to the *rights of third persons,* while section 4 refers to the validity of mortgages on personal property, *as against the creditors of the mortgagor,* and seemingly creates new rights for a limited class of persons, namely, creditors. In the light of the

history of the chattel mortgage legislation in this State, the amendment of section 4 in 1931 was obviously enacted to protect general creditors from the indeterminate secret lien of an unrecorded chattel mortgage, and limited the time during which such lien might remain secret to 10 days after the mortgage was executed.

The garnishee contends, however, that the words, "creditors of the mortgagor" are limited to *lien* creditors, and that a mortgagee under a defectively recorded or executed mortgage, by taking possession of the personal property before any lien intervenes, perfects his title to the property as against everybody. It is urged that our courts have continuously and consistently held that if a mortgagee under a defectively recorded instrument takes possession of the property before any lien intervenes, he thereby perfects his title to the chattels against the whole world, except those creditors who had a lien of the property before possession was taken, and a number of early cases are cited construing the meaning of the words, "third persons," as used in the statute. (*Allcock v. Loy,* 100 Ill. App. 573; *Sumner v. McKee,* 89 Ill. 127; *Central Trust Co. v. Sheridan Beach Hotel Bldg. Corp.,* 259 Ill. App. 404; *Springer v. Lipsis,* 209 Ill. 261; *First Nat. Bank v. Barse Live Stock Commission Co.,* 198 Ill. 232; *Chipron v. Feikert,* 68 Ill. 284; and *Southern Surety Co. v. People's State Bank,* 332 Ill. 362.) This contention of the garnishee and the foregoing cases cited in support thereof was applicable to the situation that existed before the statute was amended in 1931, but it does not take into consideration the new subject matter added to section 4 nor answer the question whether the legislature intended by the amendment to protect general creditors from the indeterminate secret lien of an unrecorded chattel mortgage and the resulting consequences that follow from a

failure to file the mortgage or to take immediate possession of the mortgaged chattels.

In the case at bar the mortgage was not recorded within the 10-day period prescribed by the statute, and therefore as to the creditors of the mortgagor it was as though it had never been recorded. The garnishee argues that under these circumstances the mortgagee took possession of the property and was thereby protected, except as against intervening *lien* claimants; that since plaintiff in this case did not have a lien on the property prior to the time that the mortgagee took possession, he was merely a general creditor and that section 4, as amended, was not intended to apply to general creditors of the mortgagor but only to judgment creditors or those having a valid lien on the property.

We find no decision in this State construing the meaning and effect of the words, "creditors of the mortgagor," as used in the amendment of section 4, but various States, including New York, Michigan, Missouri, New Jersey, California and Florida, having similar statutes, have construed language of like import and under similar circumstances. In most of these States the statute fixed no time within which the chattel mortgage had to be recorded, but the courts have uniformly construed the respective statutes to mean that the mortgage, in order to preserve its validity as against the creditors of the mortgagor, has to be recorded with prompt dispatch, and have held that unless the mortgagee takes possession or records his mortgage immediately, or within a reasonable time, his rights are postponed to those of all creditors, whether they became such before or after the mortgage was recorded or possession taken by the mortgagee. Thus, under sections 230 and 235 of the lien law, a statute similar to ours, the court, in *Shay's Estate,* 157 N. Y. Misc. 615, 285 N. Y. S. 379, decided in 1935, defined the word "creditor" as follows

(pp. 381–383): "The term 'creditors,' as used in the sections quoted, includes all persons who were such while the chattels remained in possession of the mortgagor. . . . A simple contract creditor is as much within the protection of the statute as a creditor whose debt has been merged in a judgment. . . . It will be noted that . . . [the statute says] the mortgage . . . shall be invalid as against the creditors of the mortgagor, not merely as against judgment creditors having executions. . . . *The rule that a creditor must first recover a judgment is simply one of procedure and does not affect the right.*" (Italics ours.)

In *Ransom & Randolph Co. v. Moore,* 272 Mich. 31, the court, in construing the Michigan Chattel Mortgage Act, defined "creditors" as used in that statute in the following language (pp. 36–37): "The recording statute . . . was enacted for the purpose of protecting bona fide innocent creditors against the danger of being misled into extending credit to a debtor with a secret lien on his property. The statute assures the complete protection of such creditors by declaring an unfiled chattel mortgage to be absolutely void as against them, unless accompanied by immediate delivery and followed by an actual and continued change of possession of the things mortgaged. *We therefore hold, following the tendency of our former decisions as above noted, that a mortgagee under an unrecorded chattel mortgage cannot, by subsequently taking possession of the property under and by virtue of his mortgage, acquire any right as against an interim creditor, who extended credit to the mortgagor between the date of execution of the mortgage and the taking of possession by the mortgagee. . . .*" (Italics ours.) In its opinion the court quoted from the earlier decision in *Dempsey v. Pforzheimer,* 86 Mich. 652, as follows: "The gist of the reason is that the creditor has no business with the debtor's property until he has obtained possession of it by some legal

process that gives him a lien upon it. This is not because of any right that the mortgagor, who has kept his mortgage from record, has against the other creditors, but because such creditors have no right to touch the debtor's property without his consent, without legal process.''

In *In re Bothe*, 173 Fed. 597, the court had occasion to consider the recording provisions of the Missouri Chattel Mortgage Act, and in discussing the question here-involved made the following observation, quoting from *First Nat. Bank v. Connett*, 142 Fed. 33: ''Such a mortgage is also utterly void as to simple contract creditors who extended credit after it was given, and who have secured no title or lien by purchase, execution, attachment or otherwise. As to them the subsequent recording of the instrument is of no effect. It cannot be asserted against the enforcement of their demands.''

In *Roe v. Meding*, 53 N. J. Eq. 350, the court in construing section 4 of the Chattel Mortgage Act of New Jersey held that unless the mortgagee takes possession or records his mortgage immediately his rights are postponed to those of all creditors, whether they became such before or after the mortgage was recorded or possession taken by the mortgagee.

A similar conclusion was reached by the Supreme Court of California in *Ruggles v. Cannedy*, 127 Cal. 290, 53 Pac. 911 and *Chelhar v. Acme Garage*, 61 P. (2d) 1232, wherein the court gave effect to section 2957 of the California Civil Code, regulating chattel mortgages, which provides in substance that a mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and incumbrances of the property in good faith and for value, unless recorded.

The Florida Chattel Mortgage Act contains a provision that no mortgage of personal property shall be valid as against creditors or subsequent incumbranc-

ers of the mortgagor, unless it be recorded or unless the mortgagee takes immediate possession of the property. In *Spellman v. Beeman,* 70 Fla. 575, 70 So. 589, Spellman failed to record a mortgage which was executed May 14, 1913, until June 5, 1914. Beeman obtained a mortgage on the same chattels from the same mortgagor on July 7, 1913, which was improperly recorded. Spellman took possession of the chattels, and Beeman thereupon filed a bill to foreclose, and in discussing the respective rights of the parties under the chattel mortgage statute of Florida, the court said: "The Spellman mortgage, being void as to Beeman, continued to be void as to him, and the subsequent taking of possession by Agnes R. Spellman of the mortgaged property or the record of her mortgage after Beeman had, for a valuable consideration and without notice of her mortgage, acquired his, would not restore the validity of her mortgage as against him."

In *Landis v. McDonald,* 88 Mo. App. 335, a mortgage on chattels was not recorded. Landis extended credit to the mortgagor and was a general creditor, but before he obtained a judgment the mortgagee took possession of the chattels. The controversy between the parties as to their respective rights grew out of the Missouri statute, which is similar to the provisions of the Illinois Chattel Mortgage Act, and the court, in an exhaustive opinion, said the reason for the rule that a mortgagee cannot defeat the rights of a creditor by taking possession of the chattels under an improperly recorded mortgage before the creditor had obtained a judgment or made his claim a lien on the mortgaged chattels, saying (p. 340): "But it is said that the creditors in this case being general creditors, or creditors at large, they cannot invoke the aid or protection of the statute; and that if they could, they have not shown that they were harmed, or that they were deceived by the concealment of the mortgage. We are, however,

of the opinion that the statute applies to and protects a general creditor, or, as he is sometimes called, a creditor at large. While it is necessary that the creditor must be prepared to lay hold of the property in specie (such for instance, as by attachment, or execution under a judgment) when he comes to enforce his right; yet, that right may accrue to him as a mere general creditor. In discussing the subject, the court of appeals in New York said: 'It is true, the mortgage cannot be legally questioned until the creditor clothes himself with a judgment and execution, or with some legal process against his property; for creditors cannot interfere with the property of their debtor without process. But when they present themselves with their process they may, I think, go back to the origin of their debt, and show, if they can, that when it was contracted, the incumbrance with which they are now confronted existed and was kept secret, by being withheld from the proper officer.' . . . The statute does not make it a condition to its protection that the creditor must be a specific creditor with process for seizure of the property in his hands. 'The fact that the creditor cannot assail the mortgage until he has seized the property is of no moment in determining whether he belongs to the class of persons as to whom the mortgage is void.' (*Bank v. Oium,* 3 North Dak. 193, 200; *Feary v. Cummings,* 41 Mich. 383.) If he belongs to the statutory class, he may then prepare, or qualify himself to assert his right by the proper procedure, and when thus prepared with process he may enforce the right which accrued to him as a creditor at large.

". . . It is of no avail to defendant (mortgagee) that he took possession of the goods. The fraud had already been committed and the injury already done; 'taking possession will not nullify or neutralize an actual fraud.' "

In the case at bar the mortgagee delayed the filing of its mortgage for more than a month beyond the

10-day period provided by statute, and under the provisions of the Illinois Chattel Mortgage Act and decisions in substantially all states which have construed statutes similar, this rendered the mortgage fraudulent and void as to the creditors of the mortgagor; and although Braud purchased the chattels at what he supposed was a valid mortgage sale, he should not be permitted to retain possession of the proceeds of the chattels sold to the exclusion of the creditors of the mortgagor. The cases relied upon by the garnishee were all decided prior to the amendment of the act in 1931, and we think they are not helpful in construing the present statute, because, obviously, the legislature, by amending the act, sought to eliminate the unfairness and inequity made possible by the maintenance of a secret lien under the statute before its amendment. Secret liens are not favored in our law, and the whole trend of legislation has been to protect persons having valid rights against those who, from design or negligence, have failed to record their papers when required to do so by statute. (*Wardlaw v. Troy Oil Mill*, 74 S. C. 368, 54 S. E. 658.)

During the pendency of this appeal the garnishee moved to dismiss the appeal, and that motion was reserved to the hearing. It is first urged in support of the motion that since Collateral Finance Company is a partnership, there is no proper plaintiff to the judgment on which the garnishment proceedings are predicated. Meier Motors, Inc., the original defendant, waived the fact that the suit was instituted against it by plaintiff in the plaintiff's firm name, and since Meier Motors, Inc., itself could not now raise this question, because it permitted the case to go to trial and judgment on its merits, the garnishee, whose rights are limited to those of the original defendant, should not be permitted to raise the objection at this time. (20 Ruling Case Law, p. 921, par. 133.) It has been held that a judgment in favor of or against a firm,

in the firm name, is not void but is merely irregular, and such a judgment is not subject to collateral attack, where the defendants were personally served, appeared, and did not in any manner question the form in which the plaintiff's suit was brought. (29 L. R. A. (N. S.) 284; *Ives v. Muhlcnburg*, 135 Ill. App. 517.) Moreover, the rule authorizing a partnership to sue or be sued in the partnership name is not one of substantive law, but rather a matter of practice to be defined by the local authority, which the judges of the municipal court of Chicago are authorized to regulate by rules. (*Fleischman v. Walker*, 91 Ill. 318.)

The other ground urged for dismissal of the appeal is that the report of proceedings was filed before, and not after, the notice of appeal was served. We believe, as was said in *People ex rel. Wilmette State Bank v. Village of Wilmette*, 294 Ill. App. 362, that the Civil Practice Act was adopted to facilitate an orderly disposition of business of the courts and to expedite the prompt administration of justice; that the purpose of the act was to simplify the procedure to enable the parties to a cause to have the merits of their controversies passed upon by the courts; and that to this end the act should be liberally construed. The fact that the report of proceedings was approved and filed before the notice of appeal was served is not contrary to the language or spirit of the act.

In view of our conclusions, the judgment of the municipal court, discharging the garnishee, is reversed and the cause is remanded with directions that judgment be entered against I. S. Braud, trading as Braud Motors Sales, the garnishee, for the amount of $2,777, plus interest at the rate of 5 per cent per annum from the date of its rendition, and costs.

*Judgment reversed and cause remanded with directions.*

BURKE, P. J., and JOHN J. SULLIVAN, J., concur.